Filed: May 9, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 99-1598(L)
(CA-93-189-5-S)

_____

Valero Terrestrial Corp., et al,

                                  Plaintiffs - Appellants,

        versus

James H. Paige, etc., et al,

                                  Defendants - Appellees.

_____

O R D E R

_____

        The court amends its opinion filed April 20, 2000, as follows:


        On pages 1 and 2 -- the spelling of "Enviromental" is cor-
rected to read "Environmental."

        On page 15, first paragraph, line 1 -- "non referenda" is cor-
rected to read "non-referenda."

                                  For the Court - By Direction


                                  /s/ Patricia S. Connor
                                         Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VALERO TERRESTRIAL CORPORATION;
LACKAWANNA TRANSPORT COMPANY;
SOLID WASTE SERVICES, INCORPORATED,
d/b/a J.P. Mascaro & Sons,
Plaintiffs-Appellants,

v.

JAMES H. PAIGE, Secretary, Department
of Tax and Revenue of the State of
West Virginia; DARRELL V. MCGRAW,
JR., Honorable, Attorney General of
the State of West Virginia; B.F. "CAP"
SMITH, Chief of the Division of Waste
Management for the Division of
Environmental Protection; LAIDLEY ELI
MCCOY, Director, Division of

Environmental Protection, of the
Department of Labor, Commerce and
Environmental Resources of the State
of West Virginia,
Defendants-Appellees,

and

JOHN RANSON, Secretary, Department
of Labor, Commerce and
Environmental Resources of the State
of West Virginia; PUBLIC SERVICE
COMMISSION OF WEST VIRGINIA,
Defendants,

and

LARRY HARLESS,
Respondent.

No. 99-1598

VALERO TERRESTRIAL CORPORATION;
LACKAWANNA TRANSPORT COMPANY;
SOLID WASTE SERVICES, INCORPORATED,
d/b/a J.P. Mascaro & Sons,
Plaintiffs-Appellees,

v.

JAMES H. PAIGE, Secretary, Department
of Tax and Revenue of the State of
West Virginia; DARRELL V. MCGRAW,
JR., Honorable, Attorney General of
the State of West Virginia; B.F. "CAP"
SMITH, Chief of the Division of Waste
Management for the Division of
Environmental Protection; LAIDLEY ELI
MCCOY, Director, Division of

Environmental Protection of the
Department of Labor, Commerce and
Environmental Resources of the State
of West Virginia,
Defendants-Appellants,

No. 99-1599

and

JOHN RANSON, Secretary, Department
of Labor, Commerce and
Environmental Resources of the State
of West Virginia; PUBLIC SERVICE
COMMISSION OF WEST VIRGINIA,
Defendants,

and

LARRY HARLESS,
Respondent.

Appeals from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CA-93-189-5-S)

2

Argued: January 27, 2000

Decided: April 20, 2000

Before LUTTIG and MOTZ, Circuit Judges, and
Norman K. MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed in part and vacated in part by published opinion. Judge Luttig wrote the opinion, in which Judge Motz and Judge Moon joined.

_____

**COUNSEL**

**ARGUED:** William Francis Fox, Jr., Harleysville, Pennsylvania, for Appellants. Armando Frank Benincasa, Office of Legal Services, WEST VIRGINIA DIVISION OF ENVIRONMENTAL PROTECTION, Charleston, West Virginia, for Appellees Smith and McCoy; Silas Bent Taylor, Senior Deputy Attorney General, Charleston, West Virginia, for Appellees Paige and McGraw. **ON BRIEF:** Logan Hassig, SNYDER & HASSIG, New Martinsville, West Virginia, for Appellants. William E. Adams, Jr., Office of Legal Services, WEST VIRGINIA DIVISION OF ENVIRONMENTAL PROTECTION, Charleston, West Virginia, for Appellees Smith and McCoy.

_____

**OPINION**

LUTTIG, Circuit Judge:

Appellants Valero Terrestrial Corporation, Lackawanna Transport Co., and Solid Waste Services, Inc., d/b/a J.P. Mascaro & Sons (collectively "Valero") appeal from the district court's 1999 order dismissing their complaint as moot and vacating most of its 1997 judgment, which had declared unconstitutional and enjoined enforcement of the following provisions of the West Virginia Code pertaining to waste disposal and management: § 24-2-1c, § 22-15-10(g),

3

§ 22-15-10(f), § 22-15-1(c), §§ 22C-4-24-28, § 22C-4-24, § 22C-4-2(d), § 22-15-20(e), § 22-15-8. Appellees Laidley Eli McCoy, B.F. "Cap" Smith, the Public Service Commission, James H. Paige, and Darrell V. McGraw, Jr. cross-appeal from the district court's 1999 order, insofar as that order leaves intact the portion of the 1997 judgment that declared unconstitutional and enjoined enforcement of certain local referenda procedures provided for by the above-cited provisions of the Code.

Although, in error, the district court assumed that, in deciding whether to vacate its own prior opinion, it was necessarily bound by the Supreme Court's decision in U.S. Bancorp Mtge. Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994), ultimately the district court correctly vacated the non-referenda portions of its 1997 judgment. We thus affirm this part of the district court's 1999 order. Because the district court was without jurisdiction to enter those portions of its 1997 judgment that it refused to vacate in 1999, we ourselves vacate those portions of the court's judgment.

I.

Valero is engaged in the solid waste landfill and sewage sludge compost industries in West Virginia. Seven years ago, Valero brought this action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of several provisions of the West Virginia Code pursuant to which waste disposal and management were regulated. In 1997, the district court declared the West Virginia Code provisions cited above invalid under the dormant Commerce Clause, and entered a permanent injunction prohibiting their enforcement.

While various motions for reconsideration were pending before the district court, the West Virginia Legislature substantially revised the enjoined and other related provisions of the Code. Appellees then moved pursuant to Federal Rule of Civil Procedure 12(b)(1) for the complaint to be dismissed as moot, and moved pursuant to Federal Rule of Civil Procedure 60(b) for the district court to vacate "nearly all" of its 1997 judgment.[1] The district court thereafter dismissed the

_____

**1** In their motion to vacate filed with the district court, appellees cited Rule 60(b)(3) and stated that that rule "permits an order granting relief

complaint as moot, and vacated its 1997 judgment, except for the portion thereof that declared unconstitutional and enjoined enforcement of those portions of the Code that provided for local referenda on the creation or expansion of specified dumpsites. These appeals followed.

## II.

As a threshold matter, Valero contends in its submissions that this case is not moot, and that the district court therefore erred in dismissing its complaint. At oral argument before this court, however, Valero conceded mootness. We agree that the case between these parties is moot.

First, we reject Valero's contention that the statutory amendments were so minor and insignificant that they did not render moot its complaint against the appellees. The amendments repealed the former requirement that local waste be accorded priority over non-local waste, eliminated county commissions from the dumpsite approval process, and replaced all of the previously parochial statutory preambles with language adopting a policy of equal and uniform treatment of local and non-local waste. These amendments were anything but minor and insignificant.

Second, we reject Valero's contention that, under City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982), this case remains live. In Mesquite, the Supreme Court held that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Id. at 289. Valero argues that West Virginia's amendments to its statutes represented such "voluntary cessation" by the State, and that such voluntary cessation should in turn be attributed to appellees. Based on our review of

_____

from a final judgment that `has been satisfied, released, or discharged.'" J.A. 58. However, appellees apparently confused Rule 60(b)(3) with the first clause of Rule 60(b)(5). Rule 60(b)(3) does not provide for relief on the above-quoted grounds; rather, it authorizes relief from judgment in instances of "fraud [. . .], misrepresentation, or other misconduct of an adverse party." No further reference to Rule 60(b) is made in either party's briefs, or, for that matter, in the opinion and order from which the present appeals were taken.

5

the post-Mesquite caselaw, however, we are convinced that Mesquite is generally limited to the circumstance, and like circumstances, in which a defendant openly announces its intention to reenact "precisely the same provision" held unconstitutional below. 455 U.S. at 289 and n.11. In other words, we remain satisfied that statutory changes that discontinue a challenged practice are "usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994) (citing cases). For example, in U.S. Dep't of the Treasury, Bureau of Alcohol, Tobacco and Firearms v. Galioto, 477 U.S. 556 (1986), a unanimous Supreme Court dismissed as moot a former mental patient's challenge to a firearms statute, because, after certiorari had been granted but before the case was decided, Congress amended the statute to permit former mental patients to apply for an exemption from the bar on firearms purchases by current and former mental patients. The Court did so without once inquiring whether the United States could be said to have "voluntarily c[eased]" its prior practice of categorically refusing to permit former mental patients to purchase firearms. Accordingly, the dismissal of Valero's complaint as moot is affirmed.

III.

Turning to the district court's challenged decisions regarding vacatur of its earlier opinion, the district court simply assumed, as do both parties before us, that a district court, in deciding whether to vacate its own prior opinion, is necessarily bound by the holding in the Supreme Court's opinion in U.S. Bancorp Mtge. Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994). In this assumption, the parties are mistaken and the district court erred.

In Bancorp, the Supreme Court granted certiorari on, and decided only, the question "whether appellate courts in the federal system should vacate civil judgments of subordinate courts." 513 U.S. at 19 (emphases added). And, in fact, the Court decided this question only in the context of "cases that are settled after appeal is filed or certiorari sought." Id. (emphasis added). That the Court decided only the question of the standards applicable to appellate vacatur of appellate decisions (and, actually, only Supreme Court vacatur of appellate

6

decisions) is clear not only from the Court's explicit statement that it granted certiorari to decide this issue, but also from the procedural context in which the case arose. The Court was presented, procedurally, only with the issue of appellate vacatur of appellate decisions because, after the Court had granted certiorari and received briefing in the Bancorp case, the parties settled and Bancorp requested that the Supreme Court itself "exercise [its] power under 28 U.S.C. § 2106 to vacate the judgment of the Court of Appeals." 513 U.S. at 20. As the Court noted, 28 U.S.C. § 2106 is "[t]he statute that supplies the power of vacatur" for, and only for, "[t]he Supreme Court or any other court of appellate jurisdiction." 513 U.S. at 21. It speaks not at all to the power of a district court to vacate or otherwise modify its own opinions.

If there were any residual question that the Court in Bancorp considered only the question of appellate vacatur of appellate decisions -- and frankly we think there should be none -- it is answered in two postscripts to the Court's analysis of the appellate authority under 28 U.S.C. § 2106. In the first, the Court observed that "[a]lthough the case before [it] involve[d] only a motion to vacate, by reason of settlement, the judgment of a court of appeals [. . .]," it was nonetheless "appropriate to discuss the relevance of [the Court's] holding to motions at the court-of-appeals level for vacatur of district court judgments." Id. at 28. The Court thereafter followed with a discussion, the essential conclusion of which is that the same considerations that inform the Supreme Court's decision whether to vacate an opinion of a court of appeals should also inform a court of appeals' decision whether to vacate a district court opinion. This postscript, and the ensuing discussion, thus confirms both that the Court's holding is actually limited to Supreme Court vacatur of appellate court opinions, but more importantly as concerns the instant case, that its reasoning extends no further than inferior appellate court vacatur of district court opinions.

The second postscript, with which the entire Bancorp opinion concludes, is even more telling. In this passage, the Supreme Court reminds the courts of appeal that, when presented with a motion to vacate a district court judgment, they may, "even in the absence of, or before considering the existence of, extraordinary circumstances" that might justify vacatur, "remand the case with instructions that the

7

district court consider the request, <u>which it may do pursuant to Federal Rule of Civil Procedure 60(b)</u>." <u>Id</u>. at 29 (emphasis added). Thus, in this postscript, not only does the Court again confirm that its holding and discussion were limited to appellate vacatur, but it even expressly distinguishes the appellate vacatur authority from a district court's authority under Federal Rule of Civil Procedure 60(b) to order relief from judgment.

Accordingly, it is clear not only that the holding of <u>Bancorp</u> extends only to appellate court vacatur, but also that the appellate power of vacatur derives from a source different from that which confers the vacatur power upon a district court. The appellate vacatur power derives from 28 U.S.C. § 2106, whereas the district court power derives from Federal Rule of Civil Procedure 60(b).

That the respective vacatur powers of the appellate courts and the district courts derive from different sources, of course, does not necessarily mean that the standards pursuant to which those powers are exercised are different. In the circumstance of vacatur due to mootness, however, we are satisfied that the standards under 28 U.S.C. § 2106 and Rule 60(b) are essentially the same.

Under <u>Bancorp</u>, the "principal" consideration in determining whether the "extraordinary" relief of appellate vacatur is warranted is "whether the party seeking relief from the judgment caused the mootness by voluntary action," 513 U.S. at 24; <u>see also id</u>. at 26 (noting the "emphasis on fault" in deciding whether vacatur is justified), or whether, instead, appellate review of the adverse ruling was prevented by "the vagaries of circumstance" or the "unilateral action of the party who prevailed below," <u>id</u>. at 25. In the former circumstance, such as where mootness occurs because of settlement, "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur," <u>id</u>., at least absent "exceptional circumstances," <u>id</u>. at 29. In the latter circumstances, vacatur remains available, subject, as always, to considerations of the public interest. As the Court was at pains to emphasize in <u>Bancorp</u>, there is a substantial public interest in judicial judgments:

> Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the

8

property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.

Id. at 26-27 (quoting Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp., 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). Thus, absent unusual circumstances, the appellate vacatur decision under Bancorp is informed almost entirely, if not entirely, by the twin considerations of fault and public interest.

The Supreme Court has not addressed, post-Bancorp, whether the standards governing district court vacatur for mootness are identical to the standards governing appellate court vacatur for mootness. But we are convinced that Bancorp's considerations of relative fault and public interest must also be largely determinative of a district court's decision whether to vacate its own judgment due to mootness under Rule 60(b), and specifically Rule 60(b)(6).**2** Several reasons underlie our conclusion.

_____

**2** Unlike 28 U.S.C. § 2106, Rule 60(b) does not, by its terms, authorize vacatur; rather, the Rule authorizes only "relief from judgment." The Supreme Court, however, has explicitly held that Rule 60(b)(6) "provides courts with authority `adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863-64 (1988) (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949)).

It must be presumed that vacatur is available under the other subparts of Rule 60(b), as well. As the Court made clear in Liljeberg, however, the difference between Rule 60(b)(6) and Rules 60(b)(1)-(5) is that "`extraordinary circumstances' are required to bring the[Rule 60(b)(6)] motion within the `other reason' language" of that Rule. Liljeberg, 486 U.S. at 863 n.11; see also id. at 864 (noting that the Court had cautioned in Ackermann v. United States, 340 U.S. 193, 199, 202 (1950), that Rule 60(b)(6) "should only be applied in `extraordinary circumstances'").

While district court vacatur of an injunction, as opposed to a declaratory judgment like the one we discuss above in text, is theoretically possible under Fed. R. Civ. P. 60(b)(6), but see Liljeberg, 486 U.S. at 863 n.11 (suggesting that the logic recited in that footnote "suggests that clause (6) [of Rule 60(b)] and clauses (1) through (5) are mutually exclusive" (citing 11 C. Wright & A. Miller, Federal Practice and Procedure

9

First, the relief of vacatur is equitable in nature, see Bancorp, 513 U.S. at 25 (discussing the common "equitable tradition of vacatur"), and we can discern no reason why, as such, the general presumption against vacatur, which arises by virtue of the extraordinary nature of that relief, should be different for the district court than for the appellate court. Nor can we discern any reason why different considerations would be relevant to a trial court in deciding whether to vacate its own judgment due to mootness than would be relevant to an appellate court in deciding whether to vacate a lower court's judgment because of mootness, especially given that the particular considerations adopted by the Court in Bancorp derived exclusively from the extraordinary and equitable nature of the relief of vacatur, rather than from any particular statutory mandate or from any power or ability unique to the appellate courts.

Second, and not unimportantly, we cannot immediately think of considerations that would be particularly relevant (at least invariably so) to the vacatur-for-mootness inquiry beyond those identified by the Supreme Court in Bancorp. When the question is whether to vacate a judgment in a controversy that has become moot, the reason for the mootness, and in particular, the responsibility, if any, of the respective parties for causing the mootness, combined with the public interest in the judicial product itself, would seem for the most part to exhaust the list of possibly relevant considerations.[3]

_____

§ 2864 (1973)), such is most often sought and obtained under Rule 60(b)(5), pursuant to the standards (at least when the vacatur is sought on the grounds of a significant change in law, as in this case) that we explain infra. Rule 60(b)(5) authorizes vacatur, among other times, when "it is no longer equitable that the judgment should have prospective application."

[3] We recognize that a few courts have concluded that, because of a district court's greater familiarity with the facts and its other institutional advantages relative to an appellate court, district courts should have broader discretion to make the equitable determination whether to grant vacatur or not. See, e.g., American Games, 142 F.3d at 1170; Krolikowski v. Volanti, 1996 WL 451307 at *3 (N.D. Ill. Aug. 7, 1996). However, it does not follow from these undisputed institutional differences that different standards should govern the exercise of the vacatur power by

10

Third, there is nothing in the language of the respective vacatur authorities that would require, or even suggest, that different equitable standards do, or should, govern exercise of the respective vacatur powers. Undoubtedly in recognition of the equitable character of the vacatur remedy, the text of neither provision sets forth a substantive standard to be applied in making the vacatur decision. Section 2106 simply provides that

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

And Rule 60(b)(6) merely authorizes the district court to "relieve a party [. . .] from a final judgment, order, or proceeding for [. . .] any other reason justifying relief from the operation of the judgment." In fact, the 1946 Advisory Committee Notes even state that nothing in Rule 60(b) "assume[s] to define the substantive law as to the grounds for vacating judgments."

Fourth, even though the Supreme Court has not expressly observed as much, there actually are close parallels between the considerations that the Court held in Bancorp are relevant in deciding whether to vacate a judgment due to mootness and the considerations the Court has identified as relevant generally under Rule 60(b)(6) when "relief from the operation of [a] judgment" is sought. See, e.g., Ackermann

_____

appellate and district courts. At most, these institutional differences suggest that a deferential standard of review on appeal might apply to a district court's decision to vacate its own judgment, and also that appellate courts should in appropriate cases remand requests for vacatur to district courts, see Bancorp, 513 U.S. at 29, to make the frequently fact-intensive determination of whether "exceptional circumstances" exist. These institutional differences, however, do not provide reason to conclude that the standards governing appellate and district-court vacatur are or should be different.

11

v. United States, 340 U.S. 193 (1950). In Ackermann, the petitioner sought relief under Rule 60(b)(6) from a judgment of denaturalization, albeit not on grounds of mootness. The Court characterized such relief as "extraordinary," as in Bancorp it characterized the relief of vacatur under 28 U.S.C. § 2106. And the Court affirmed the denial of petitioner's vacatur motion specifically on the ground that petitioner had made a "voluntary, deliberate, free, untrammeled choice [. . .] not to appeal," id. at 200, just as the Court in Bancorp withheld the remedy of appellate vacatur (for mootness) from one who had, through settlement, "voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari." 513 U.S. at 25.

Although Ackermann does not specifically articulate the public interest in terms of the "presumptive[ ] correct[ness]" of judicial precedents and their "valu[e] to the legal community as a whole," as did the Court in Bancorp, see 513 U.S. at 26 (citation omitted), its observation that "[t]here must be an end to litigation someday," Ackermann, 340 U.S. at 198, similarly mirrors the Court's observation in Bancorp that the public interest dictates that "the orderly operation of the federal judicial system" must be respected. See 513 U.S. at 27. Thus, although not itself a case of vacatur for mootness, in one of the few cases in which the Supreme Court has considered the standards governing district court relief from judgment under Rule 60(b)(6), the Court rested its decision on considerations notably similar to those which it held in Bancorp were relevant to the appellate court vacatur decision.

Finally, consistent with the fact that vacatur is an equitable remedy and that nothing in the text of the appellate and district court authorities of 28 U.S.C. § 2106 and Rule 60(b)(6) requires or suggests that different standards govern the vacatur decisions of the respective courts, district courts have long vacated (or not) their own judgments due to mootness on the same grounds that appellate courts have vacated appellate judgments.

There is little caselaw to draw upon in the four-year period between Rule 60(b)(6)'s promulgation and the Supreme Court's decision in United States v. Munsingwear, 340 U.S. 36 (1950), the seminal precedent pre-Bancorp on appellate vacatur due to mootness. However, our research reveals that in the forty-four years between the

12

Court's decision in <u>Munsingwear</u> and its decision in <u>Bancorp</u>, the prevailing, even if not uniform, practice among district courts was to automatically vacate their own judgments in cases that became moot, as was the practice in the appellate courts under <u>Munsingwear</u>. <u>See</u> <u>Munsingwear</u>, 340 U.S. at 39 (noting that it had been the Court's "established practice" to "reverse or vacate" a judgment of a subordinate court that had become "moot while on its way [to the Court] or pending [the Court's] decision on the merits"). Although some did not, many did so expressly (if mistakenly) on the authority of <u>Munsingwear</u>. And some did so, even explicitly recognizing the limitation of the Court's holding in <u>Munsingwear</u> to appellate vacatur, if not to Supreme Court vacatur, either for the same prudential reasons that had prompted the appellate courts to do so or perhaps in recognition of the futility of doing otherwise given that appellate vacatur would almost certainly occur otherwise. But the general practice in the district courts was to automatically vacate for mootness.

And, although arguably too few cases in which district courts have been confronted with motions to vacate on grounds of mootness exist post-<u>Bancorp</u> to establish a general trend, it appears that the district courts still generally follow the appellate courts, vacating (or not) their own judgments using the different standards that now govern the appellate court vacatur decision -- namely, the standards set forth in <u>Bancorp</u>. Like their pre-<u>Bancorp</u> predecessors, some of these courts have done so, altogether failing to appreciate the doctrinal distinction between appellate and district-court vacatur and thus believing themselves bound by the holding of <u>Bancorp</u>. Still others, however, have done so, recognizing both the doctrinal distinction between the two vacatur powers and that <u>Bancorp</u> does not bind the district courts, but concluding, as we do today, that the <u>Bancorp</u> considerations are nonetheless of great relevance to the district court vacatur decision. As the court observed in <u>Carter</u> v. <u>Rosenberg & Estis</u>, 1999 WL 13036 (S.D.N.Y. Jan. 13, 1999), for example:

> Although not specifically addressed to Rule 60(b), district courts have interpreted <u>U.S. Bancorp</u> to alter the standard for granting a Rule 60(b) motion [from the Second Circuit's former rule requiring district courts "to vacate a judgment once the parties had settled"] [. . . .]

13

Id. at \*2; see also Agee v. Paramount Communications, Inc., 932 F. Supp. 85, 87 (S.D.N.Y. 1996), appeal dismissed, 114 F.3d 395 (2d Cir. 1997) (holding that "[t]he considerations explored in Bancorp [. . .] are also relevant on the district court level"). Only the Ninth Circuit -- and it only arguably -- has rejected the view that the standards set forth in Bancorp should also be relevant to a district court's vacatur decision under Rule 60(b)(6), holding in American Games, Inc. v. Trade Prods., Inc., 142 F.3d 1164 (9th Cir. 1998), that district courts should continue to employ a broad, open-ended "equitable balancing test" under which they "decide whether to vacate [their] judgment[s] in light of `the consequences and attendant hardships of dismissal or refusal to dismiss' and `the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" 142 F.3d at 1168 (quoting Dilley v. Gunn, 64 F.3d 1365, 1370-71 (9th Cir. 1995) (quoting Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir. 1982))).

We therefore hold that the Bancorp considerations that are relevant to appellate vacatur for mootness are also relevant to, and likewise largely determinative of, a district court's vacatur decision for mootness under Rule 60(b)(6), even if those considerations do not necessarily exhaust the permissible factors that may be considered by a district court in deciding a vacatur motion. We also hold that vacatur is available as a remedy to the district court, as it is to the appellate court, see Bancorp, 513 U.S. at 29, in "exceptional circumstances," even where the considerations of relative fault and the public interest would otherwise counsel against vacatur.

Applying the considerations of fault and public interest, we affirm the district court's decision to vacate its declaratory judgment as to the non-referenda provisions of the West Virginia statutes. In this case, the mootness was, as noted, caused by the state legislature's amendment of statutory provisions that it had earlier enacted, and not by the actions of any of the defendants before this court, all of whom are state executive officials, none of whom is the Governor. Therefore, defendant state executive officials are "in a position akin to a party who finds its case mooted [. . .] by`happenstance,' rather than events within its control." National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 353 (D.C. Cir. 1997). As a result, the principal consideration under Bancorp counsels in favor of vacatur. See

14

<u>Bancorp</u>, 513 U.S. at 25 and n.3.**4** And, given that the non-referenda statutory provisions that were declared unconstitutional either no longer exist or have been substantially revised, and there is no suggestion of their likely reenactment, we see the public interest as no bar to vacatur of the declaratory judgment.

Accordingly, we affirm the district court's vacatur of its declaratory judgment that the statutes' non-referenda provisions were unconstitutional.

IV.

In addition to vacating its declaratory judgment, the district court also vacated its injunction, pursuant to which it had enjoined enforcement of the statutes' various non-referenda provisions. The district court vacated its injunction on the assumption that that vacatur decision, too, was governed by the Supreme Court's decision in <u>Bancorp</u>. In its assumption that <u>Bancorp</u> governed this decision as well, the district court also erred, not only (as with its declaratory judgment) for the reason that <u>Bancorp</u>'s holding technically applies solely to appellate vacatur, but also because the vacatur of injunctive orders under Rule 60(b)(5)**5** is governed by the altogether different standards set forth by the Supreme Court in <u>Agostini</u> v. <u>Felton</u>, 521 U.S. 203 (1997), where, as here, the vacatur is sought on the grounds of a significant change in fact or law.

_____

**4** Because none of the changes in state law responsible for the mootness of this controversy were changes in administrative or executive regulations, we need not address ourselves to the question reserved by the Court in <u>Bancorp</u> of whether the "repeal of administrative regulations" can "fairly be attributed to the Executive Branch when it litigates in the name of the United States." <u>Bancorp</u>, 513 U.S. at 25 n.3.

**5** The district court did not specify whether it vacated its injunction under Rule 60(b)(5) or (6). <u>See</u> note 1 <u>supra</u>. Given that it is Rule 60(b)(5) that, on its face, authorizes relief from such judgments that have prospective application, we will assume for purposes of this opinion that the court proceeded pursuant to its Rule 60(b)(5) authority. Of course, we can affirm the district court's vacatur of its injunction under Rule 60(b)(5), as we do, even if it were the case that the court proceeded under Rule 60(b)(6).

15

In Agostini, which postdated Bancorp, the Court held that modification or vacatur of an injunction under Rule 60(b)(5), which provides for relief from judgment when "it is no longer equitable that the judgment should have prospective application," is required where there has been "a significant change either in factual conditions or in law." 521 U.S. at 215 (citing Railway Employees v. Wright, 364 U.S. 642, 647 (1961), and quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992)). Thus, in contrast to the inquiry for vacatur of a declaratory judgment due to mootness under Rule 60(b)(6), considerations of relative fault and public interest are irrelevant to the inquiry for modification or vacatur of an injunction under Rule 60(b)(5) on the grounds of a significant change in fact or law.

Here, however, despite having mistakenly assumed that Bancorp governed its vacatur decision with respect to the injunction, the district court did vacate its injunction. And, as we have explained, the statutory changes upon which the vacatur motion was based were indeed substantial. Therefore, without hesitation, we also affirm the district court's vacatur of the injunctive portion of its 1997 order.

V.

In their cross-appeal, defendant state officials challenge the district court's refusal to vacate those portions of its permanent injunction and declaratory judgment pertaining to the referenda provisions of the challenged state statutes. Defendants contend, inter alia, that the district court was without jurisdiction to enter these portions of its injunction and declaratory judgment, since Valero did not have standing to challenge the constitutionality of these referenda provisions. We agree.

As to the statutory provisions requiring local referenda on the creation of "Class `A'" dumpsites, it is clear that Valero lacked standing. There is no indication in the record, or in Valero's submissions to this court, that Valero had even intended to build a new "Class `A'" facility. Consequently, it was purely speculative and hypothetical that such a referendum would have caused Valero any injury, and therefore the Article III standing requirement of an injury in fact plainly was not satisfied. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 120 S. Ct. 693, 704 (2000) (citing Lujan v. Defenders of Wild-

16

life, 504 U.S. 555, 560-61 (1992), for the proposition that a plaintiff must show an injury in fact that is "actual or imminent, not conjectural or hypothetical"). Similarly, Valero lacked standing to challenge the constitutionality of the statutory provisions allowing local voters to petition for a local referendum on the expansion of certain dumpsites, because it was also purely speculative that such a referendum would have even been called, let alone that Valero would have suffered any cognizable injury therefrom.

Because the district court was without jurisdiction to enter these portions of its permanent injunction and declaratory judgment relating to the referenda provisions of the challenged state statutes, we ourselves vacate these portions of the original injunction and declaratory judgment.

CONCLUSION

The district court in 1997 issued a permanent injunction and a declaratory judgment against the operation of both the referenda and non-referenda provisions of the West Virginia Code that we cite at the outset of this opinion. In 1999, the district court vacated both the permanent injunction and the declaratory judgment, insofar as they related to the non-referenda provisions of the challenged state statutes, but left intact the injunction and the declaratory judgment, insofar as they related to the referenda provisions of the challenged state statutes.

Because Bancorp's twin considerations of relative fault and public interest are largely determinative of the district court's decision whether to vacate its own declaratory judgment due to mootness, and because the mootness-inducing statutory amendments were not caused by defendant state executive officials, we affirm the district court's vacatur of its declaratory judgment, insofar as that declaratory judgment related to the non-referenda provisions. Because the district court was required under Agostini to vacate its permanent injunction, insofar as that injunction related to the non-referenda provisions, we affirm the district court's vacatur of this portion of its permanent injunction.

Because the district court was without jurisdiction to enter those portions of its permanent injunction and declaratory judgment that

17

related to the referenda provisions, we ourselves vacate those portions of the district court's original injunction and declaratory judgment.

AFFIRMED IN PART; VACATED IN PART

18