UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-2254

MARY DOE, a human embryo "born" in the United
States (and subsequently frozen in which state
of cryopreservation her life is presently
suspended), individually and on behalf of all
other frozen human embryos similarly situated,

Plaintiff - Appellant,

versus

DONNA E. SHALALA, SECRETARY, UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES, in
her official capacity as Secretary of Health
and Human Services; DEPARTMENT OF HEALTH AND
HUMAN SERVICES, SOCIAL SECURITY; HAROLD
VARMUS, Doctor, in his official capacity as
Director of the National Institutes of Health,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Peter J. Messitte, District Judge. (CA-
99-2428-PJM)

Argued: October 27, 2004                Decided: December 7, 2004

Before LUTTIG, KING, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Rudolph Martin Palmer, Jr., Hagerstown, Maryland, for
Appellant. Thomas Mark Bondy, Civil Rights Division, Appellate
Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for

Appellees.  **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Thomas M. DiBiagio, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Mary Doe is the name given to an embryo produced by means of in vitro fertilization and now cryogenically preserved in liquid nitrogen. In August 1999, the National Association for the Advancement of Preborn Children ("NAAPC") filed suit on Mary Doe's behalf, seeking a declaration that Mary Doe is entitled to due process of law and the equal protection of laws under the Fourteenth Amendment and a permanent injunction against "any and all plans to undertake human embryo (stem cell) experimentation." This lawsuit came in response to what NAAPC perceived as President Clinton's policy favoring embryonic stem-cell research. In August 2001, President Bush announced a new policy limiting federal funding for embryonic stem-cell research to projects involving already-existing stem-cell lines. Because Mary Doe would not be threatened by this policy, the Government moved the district court to dismiss this case as moot. The district court granted the motion, and we affirm.

I.

In November 1998, then-President Clinton directed the National Bioethics Advisory Commission ("NBAC") to review federal policy concerning human stem-cell research. The final report of the NBAC, issued in September 1999, recommended that federal statutes and regulations be amended to permit funding for the use and derivation

3

of embryonic stem cells from cadaveric fetal tissue and embryos remaining after infertility treatments. Later that year, the National Institutes of Health ("NIH") published draft guidelines regarding stem-cell research funding. 64 Fed. Reg. 67,576 (Dec. 2, 1999). Under these guidelines, any future research funded by NIH would involve stem cells derived from fetal tissue or from certain early embryos that are the products of in vitro fertilization. Id. at 67,577. NIH issued its final guidelines in August 2000. 65 Fed. Reg. 51,976 (Aug. 25, 2000).

Mary Doe and the NAAPC (collectively, "Plaintiffs") commenced this lawsuit to challenge President Clinton's policy. Plaintiffs' complaint alleged that the Government could not implement that policy without violating Mary Doe's constitutional rights, especially her rights under the Fourteenth Amendment. Plaintiffs requested that the district court "declare the equal humanity and personhood of Mary Doe and grant her equal protection and due process of the laws," find President Clinton's policy unconstitutional, and enjoin the Government to "cease and desist any and all plans to undertake human embryo (stem cell) experimentation."

In August 2001 -- while this lawsuit was pending -- President Bush announced a new policy concerning federal funding for stem-cell research. Under President Bush's policy, federal funding would remain available for research involving existing stem-cell

4

lines, with the following conditions: (1) the stem cells must have been derived from an embryo that was created for reproductive purposes, (2) the embryo was no longer needed for those purposes, (3) informed consent must have been obtained for donation of the embryo, and (4) no financial inducements were provided for donation of the embryo. Federal funding would not be available for stem-cell research involving embryos that had not yet been destroyed. In response to this new policy, NIH announced in November 2001 that it was withdrawing its earlier-issued guidelines. See 66 Fed. Reg. 57,107 (Nov. 14, 2001).

Arguing that the current policy poses no threat to Mary Doe, the Government moved the district court to dismiss Plaintiffs' challenge to the former policy as moot. The district court dismissed the case, and this appeal followed.

## II.

The district court's ruling on mootness presents a question of law that we review de novo. See Troiano v. Supervisor of Elections, 382 F.3d 1276, 1282 (11th Cir. 2004); cf. Piney Run Pres. Ass'n v. County Comm'rs, 268 F.3d 255, 262 (4th Cir. 2001) (applying the same standard of review to a ruling on standing).

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. To invoke the jurisdiction of a federal court, a litigant must have suffered,

or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). This requirement ensures that federal courts will resolve only "real and substantial controversies admitting of specific relief through a decree of a conclusive character" and will not issue opinions "advising what the law would be upon a hypothetical state of facts." Id. (internal quotations omitted) Since the Government has changed its policy concerning embryonic stem-cell research, Mary Doe is not now threatened with any injury traceable to the defendants. Thus, any ruling on the merits of Mary Doe's claims would be nothing other than an "advisory opinion[] on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48 (1969) (per curiam).

## A.

Plaintiffs argue that the mere voluntary cessation of illegal conduct does not moot their ongoing challenge to that conduct. Although "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot," United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953), a case may nevertheless be moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,"

6

<u>Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000). The party asserting mootness bears the burden to show that the challenged conduct cannot reasonably be expected to recur. <u>Id.</u>

A legislature may voluntarily cease allegedly illegal conduct by amending or repealing the challenged law or by allowing it to expire. In general, the amendment, repeal, or expiration of a statute moots any challenge to that statute. <u>See</u> <u>Lewis</u>, 494 U.S. at 474; <u>Valero Terrestrial Corp. v. Paige</u>, 211 F.3d 112, 116 (4th Cir. 2000). The Supreme Court has held such statutory challenges not moot only where it appeared likely that the legislature would enact a similar policy if the lawsuit were dismissed. <u>See</u> <u>Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.</u>, 508 U.S. 656, 662 (1993); <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 & n.11 (1982).

We have noted that the <u>City of Mesquite</u> line of cases is "generally limited to the circumstance, and like circumstances, in which a defendant openly announces its intention to reenact precisely the same provision held unconstitutional below." <u>Valero Terrestrial</u>, 211 F.3d at 116. Similarly, we stated in <u>American Legion Post 7 v. City of Durham</u>, 239 F.3d 601 (4th Cir. 2001), that "[t]he practical likelihood of reenactment of the challenged law appears to be the key to the Supreme Court's mootness

7

jurisprudence" in this context. Id. at 606. We concluded in American Legion that a city's amending a zoning ordinance alleged to violate the First Amendment mooted the plaintiff's challenge to the ordinance, because there was "little likelihood" that the city would revive the original ordinance. Id.

Plaintiffs contend that these authorities are inapposite because they involved statutes or ordinances rather than administrative policies or regulations. According to Plaintiffs, the ease with which administrative actions can be changed makes it likely that the conduct they challenge will recur. We have noted, however, that "[w]ithdrawal or alteration of administrative policies can moot an attack on those policies," Bahnmiller v. Derwisnki, 923 F.2d 1085, 1089 (4th Cir. 1991), suggesting that ordinary mootness principles apply to administrative as well as legislative action. In Commonwealth of Virginia v. Califano, 631 F.2d 324 (4th Cir. 1980), for example, we applied ordinary mootness principles to a state's challenge to a decision by a federal agency concerning the state's welfare program. Although the federal agency agreed to give the state the relief it sought -- a formal hearing on the state's amendment of its welfare program -- the agency refused to concede that the state was entitled to that relief as a matter of right and insisted that it would continue to act as it had in the past. Id. at 326. Under these circumstances, we concluded that the agency had failed to carry its burden of

8

demonstrating that there was "no reasonable expectation that the wrong [would] be repeated," and we held that the state's challenge was not moot. Id. at 326-27. It is of no consequence that the challenged conduct in this case is administrative rather than legislative in character.

In this case, the Government has carried its burden of demonstrating that it will not revive President Clinton's policy concerning embryonic stem-cell research. NIH officially withdrew its guidelines implementing the former policy. The current policy allows federal funds to be used only for research involving existing embryonic stem-cell lines, and NIH is following that policy. No federal funds are being used to further research involving embryonic stem-cell lines that have not yet been generated from extant embryos such as Mary Doe. In short, there is no evidence suggesting that the Government is likely to revive the policy that is the subject of this lawsuit. See American Legion, 239 F.3d at 606.

B.

Plaintiffs further contend that this case is not moot because the challenged conduct is capable of repetition, yet evading review. "The capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present: (1) the challenged action is in its

9

duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal citations and quotations omitted).  For the reasons stated above, there is no reasonable expectation that Mary Doe will be subject to the former policy on stem-cell research again.  The replacement of that policy with a new policy "diminishes the potential for repetition of the dispute that brought about this litigation." Pressley Ridge Schs. v. Shimer, 134 F.3d 1218, 1221 (4th Cir. 1998) (noting that an agency's amending the challenged regulation made it less likely that the alleged injury would be repeated).

C.

Finally, Plaintiffs argue that Mary Doe and other similarly situated embryos retain an interest in the outcome of this litigation.  Plaintiffs argue that by limiting federal funding to research involving only existing embryonic stem-cell lines, the Government has threatened to deplete the supply of embryonic stem cells.  As a result, private researchers likely will make greater use of extant embryos such as Mary Doe.  This argument is meritless.  First, Plaintiffs can only speculate about the reaction of private-sector researchers to the current policy on stem-cell research.  Second, the challenge mounted in this lawsuit is to the

Government's policy for federal funding, not the private sector's response to that policy.  The fact remains that Mary Doe is not now threatened with any injury traceable to the defendants in the lawsuit.  See Lewis, 494 U.S. at 477.

## III.

Because the current policy limiting federal funding of embryonic stem-cell research to projects involving existing stem-cell lines poses no threat to Mary Doe, her challenge to the former policy is moot.  Accordingly, the judgment of the district court is

AFFIRMED.