THACKER, Circuit Judge, dissenting: The majority affirms a district court order denying relief to an individual who has spent the last seven years in federal custody without a valid conviction. I respectfully dissent. I. A. The Adam Walsh Act permits the government- to subject “sexually dangerous” persons in the custody of the Bureau of Prisons to indefinite civil commitment. 18 U.S.C. § 4248(a). The Supreme Court upheld the Adam Walsh Act as a“ ‘necessary and proper’ means of exercising the .federal authority that' permits Congress to create federal criminal laws, to punish their, violation, to imprison violators, to provide appropriately for those imprisoned; and to maintain the security of those who aré not imprisoned but who may be affected by the federal imprisonment of others.” United States v. Comstock, 560 U.S. 126, 149, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010). In short, the Adam Walsh Act is intrinsically tied to Congress’s authority to criminalize conduct. This nexus has constitutional implications. In affirming the civil commitment of an individual who has not engaged in .criminal conduct, the majority disregards that constitutional nexus. . B. After the district court vacated the criminal conviction upon which his civil commitment was based, Appellant William Carl Welsh moved for relief from the civil commitment order pursuant to Rule 60 of the Federal Rules of Civil Procedure. Before the district court, Welsh argued he was entitled to relief pursuant to Rules 60(b)(4), 60(b)(5), and 60(b)(6). For the reasons aptly1 set forth in the majority opinion, I agree that Welsh is not entitled to relief under 60(b)(4)’s “void” judgment clause or 60(b)(6)’s “any other reason” provision. However, in my view, Welsh’s civil commitment order fits squarely within the purview' of Rule 60(b)(5), which provides relief where “the judgment ... is based on an earlier judgment that has been reversed or vacated!!,] or applying [the judgment] prospectively is no longer equitable.” Fed. R. Civ. P. 60(b)(5). II. A. The “Reversed or Vacated” Clause - Pursuant to the second clause of Rule 60(b)(5), district courts have discretion to grant a party relief from a civil judgment if “the judgment .,, is based on an earlier judgment that has been reversed or vacated.” Fed. R. Civ. P. 60(b)(5). This provision applies where an earlier reversed or vacated “judgment itself [was] necessarily considered in [the] later action.” Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984). Here, the district court acknowledged that Welsh’s civil commitment “necessarily considered” his conviction because, absent the conviction, “the BOP would not have had legal custody” over Welsh at the time of the civil commitment hearing. J.A. 106-07. In my view, the district court abused its discretion by not affording relief in this instance. Appellant’s civil commitment judgment, resting on his now vacated conviction, fits so squarely within Rule 60(b)(5)’s “reversed or vacated” clause that I believe it is plainly an abuse of discretion to deny his motion. Reversal is justified on this basis alone. The district court further abused its discretion by improperly weighing the relevant considerations. Having assumed that Rule 60(b)(5)’s “reversed or vacated” clause applied to Welsh, the district court was tasked with determining whether it would exercise its discretion to grant relief. In doing so, .the district court weighed “the sanctity of final judgments” against “the incessant command of the court’s conscience that justice be done in light of [a]ll the facts.” Compton v. Alton S.S. Co., 608 F.2d 96, 102 (4th Cir. 1979) (internal quotation marks, omitted). The district court, noting the thoroughness of the civil commitment proceeding in this casé, chose' to place emphasis on the sanctity of final judgments over justice. Per the district court, vacating the judgment would offend the efforts and resources committed to those proceedings. But the sanctity of the final civil commitment order cannot bear the weight the district court gives it for at least three reasons. First, civil commitment is indefinite by nature. See 18 U.S.C. § 4248(e). The operative finding in a civil commitment hearing—that the individual is sexually dangerous—is subject to reaffirmation by government officials on an annual basis. See id, § 4247(e)(1)(B). Therefore, finality is not as pressing a concern. Second, vacatur in this case poses little threat to future final judgments. Civil commitment “has been applied to only a small fraction of federal prisoners,” Comstock, 560 U.S. at 148, 130 S.Ct. 1949. Indeed, the district court was “unaware” of any other individual in Welsh’s “unusual predicament.” J.A. 114. Third, Welsh’s “final judgment” is predicated on a vacated conviction. My conscience dictates that such a judgment cannot be treated as sacrosanct.' Against the sanctity of final judgments, the district court weighs the “command ... that justice be done in light of [a]ll the facts.” Compton, 608 F.2d at 102. The district court placed emphasis on Welsh’s status as a sexually dangerous person. While I certainly credit the government’s interest in protecting the, public from such danger, vacating Welsh’s civil commitment judgment would not leave this interest unaddressed, Welsh would still be subject to-'SORNA reporting requirements.[1] Indeed, this is precisely how Congress chose to strike the balance between protecting the public and preserving fundamental freedoms of those in Welsh’s position. See 34 U.S.C. § 20901 (establishing “a comprehensive national system for the registration of ... offenders” so as “to protect the public from sex offenders and offenders against children.”). B. The Prospective Application Clause The district court also abused its discretion in denying Appellant’s motion on equitable grounds. Pursuant to the third clause of Rule 60(b)(5), district courts may grant relief from a judgment if applying it prospectively is no longer equitable in light of “a significant change either in factual conditions or in law.” Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); see also Fed. R. Civ. P. 60(b)(5). “The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify [the judgment] in light of such changes.” Horne v. Flores, 557 U.S. 433, 447, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (citation and internal quotation marks omitted). Here, the district court concluded that Welsh failed to meet this burden. While the district court acknowledged that Welsh “no longer stands convicted” of the underlying offense upon which his civil commitment was based, the court nonetheless dismissed that concern by relying entirely upon the public’s interest in Welsh’s “continued commitment ... on the basis of [his] sexual dangerousness.” J.A. 104. This analysis is inappropriate and illogical. As a preliminary matter, we have declined to engage in a “broad, open-ended equitable balancing test” in the context of Rule 60(b)(5). Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 122 (4th Cir. 2000) (internal quotation marks omitted). “[I]n contrast to the inquiry for vacatur ... under Rule 60(b)(6), considerations of relative fault and public interest are irrelevant to the inquiry for ... vacatur of an injunction under Rule 60(b)(5) on the grounds of a significant change in fact or law.” Id. (emphasis supplied). Here, the district court justified its consideration of the public interest by citing two Supreme Court cases. See Horne, 557 U.S. at 447, 129 S.Ct. 2579; Rufo, 502 U.S. at 384, 112 S.Ct. 748. But both Home and Rufo are self styled “institutional reform” cases where the movant’s claimed basis for relief was that continued enforcement would be detrimental to the public interest.[2] Horne, 557 U.S. at 447, 129 S.Ct. 2579; Rufo, 502 U.S. at 384, 112 S.Ct. 748. In essence, the language cited by the district court does not authorize a broad judicial inquiry into the public interest, but instead maps a possible avenue for relief available to the movant. See Horne, 557 U.S. at 447, 129 S.Ct. 2579 (“[Rule 60(b)(5)] provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in the law renders continued enforcement detrimental to the public interest.” (citation and internal quotation marks omitted)); Rufo, 502 U.S. at 384, 112 S.Ct. 748 (“Modification of a [judgment] may be warranted when changed factual conditions make compliance ... substantially more onerous .... [or] when a [judgment] proves to be unworkable because of unforeseen obstacles ... or when enforcement ... would be detrimental to the public interest.” (emphasis supplied)). At core, the operative question is whether “[t]he party seeking relief [met its] burden of establishing that changed circumstances warrant relief.” Horne, 557 U.S. at 447, 129 S.Ct. 2579. The changed circumstance here is, of course, the fact that Welsh did not commit the crime with which he was convicted. In turn, the Government has used this erroneous conviction to justify his now seven year (and counting) span of detention in a federal correctional facility. Surely, this is more than sufficient to satisfy Welsh’s burden of “establishing that changed circumstances warrant relief.” Horne, 557 U.S. at 447, 129 S.Ct. 2579. III. The district court characterized Welsh’s plea for relief from his lengthy, unjustified detention as a “substantial personal interest in release from civil commitment.” J.A. 112. This greatly understates the implications of Welsh’s continued commitment. In the United States, we detain for criminal conduct, not mere propensity. See Powell v. Texas, 392 U.S. 514, 543, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (Black, J., concurring) (“[P]unishment for a mere propensity ... is a situation universally sought to be avoided, in our criminal law; [there is a] fundamental requirement that some action be proved .... ”). This principle is so deeply embedded in our understanding of due process that it is indispensable in a free society. The Adam Walsh Act walks a tightrope by detaining for propensity a narrow group of individuals: those in legal custody of the Bureau of Prisons who are deemed “sexually dangerous.” 18 U.S.C. § 4248(a). But detaining for propensity a citizen who never should have been in federal custody in the first place[3] is not only inequitable, it is offensive to the most basic tenets of justice. Yet the district court failed to mention, address, or weigh the public’s interest in checking the government’s power to detain citizens merely by virtue of their alleged propensities. To ignore that interest is to ignore a vital cornerstone of a free society, in favor of emphasizing a general public risk. Accordingly, I respectfully dissent. . Counsel for the government acknowledged "[Welsh] would be subject to SORNA [upon release], is my understanding.” Oral Argument at 22:00, United States v. Welsh, No. 17-6355 (4th Cir. Sept. 20, 2017), http://www.ca 4.uscourts.gov/oral-argumenl/listen-tooral-arguments. Indeed, it appears from the record that Welsh’s past convictions qualify him as a tier III sex offender. See 34 U.S.C. § 20911(4); J.A. 31. Tier III offenders are subject to SORNA registration requirements for life. 34 U.S.C. § 209.15. . In Horne, the Superintendent of Public Instruction for the state of Arizona sought Rule 60(b)(5) relief from a district court’s declaratory judgment order. 557 U.S. at 441-42, 129 S.Ct. 2579. The declaratory judgment order imposed a series of obligations on the state of Arizona to comply with the Equal Education Opportunities Act. Id. The Superintendent’s Rule 60(b) motion alleged "sensitive federalism concerns” because the original order had "the effect of dictating state or local budget priorities.” Id. at 448, 129 S.Ct. 2579. In Rufo, a county sheriff moved to modify a district court consent decree providing for the construction of a new jail. 502 U.S. at 371-72, 112 S.Ct. 748. The Court acknowledged the importance of the public interest in institutional reform litigation specifically because "such [cases] reach beyond the parties involved directly in the suit and impact the public’s right to the sound and efficient operation of its institutions.” Id. at 381, 112 S.Ct. 748 (internal quotation marks omitted). To be sure, the public interest is a vital concern in cases like Horne and Rufo where public funds and federalism concerns are at play. But Horne and Rufo do not signify that the public interest is vital in all cases. . The majority asserts that "the government’s constitutional authority to civilly commit [does not] depend solely on a criminal conviction.” Ante at S36. It bases this claim on a never challenged provision permitting civil commitment of individuals “against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person.” 18 U.S.C. § 4248(a). In light of Comstock, this position is on thin ice. See Comstock, 560 U.S. at 149, 130 S.Ct. 1949. For me, extending Comstock to permit the commitment of the factually and legally innocent is a bridge too far.