*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0442p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HERMAN BLANKENSHIP, et al.,

            *Plaintiffs-Appellants,*

    *v.*

J. KENNETH BLACKWELL, Ohio Secretary of State,

            *Defendant-Appellee,*

BENSON A. WOLMAN, et al.,

            *Intervenors-Appellees.*

No. 04-4259

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00965—Edmund A. Sargus, Jr., District Judge.

Submitted: October 26, 2005

Decided and Filed: November 16, 2005

Before: KEITH and BATCHELDER, Circuit Judges; OBERDORFER, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Mark R. Brown, CAPITAL UNIVERSITY LAW SCHOOL, Columbus, Ohio, Michael P. Cassidy, CASSIDY & ASSOCIATES, Independence, Ohio, for Appellants. Arthur James Marziale, Jr., OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, Andrew B. Clubok, KIRKLAND & ELLIS, Washington, D.C., for Appellee. Donald J. McTigue, LAW OFFICES OF DONALD J. McTIGUE, Columbus, Ohio, for Intervenors.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Plaintiffs-Appellants are five Ohio residents who served as members of a committee to qualify Ralph Nader and Peter Camejo (hereinafter, "Nader") as independent joint candidates for President and Vice-President of the United States on the Ohio ballot in the election of 2004. They appeal the dismissal of their claim for a declaratory judgment, in which they asked that Ohio's law requiring circulators of nominating petitions to be residents of,

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

and registered voters in, the state of Ohio, be declared in violation of the First and Fourteenth Amendments to the United States Constitution. Because the district court's dismissal of Appellants' declaratory judgment claim rested upon grounds that are immune from challenge due to the 2004 election's mooting Appellants' case, and because Appellants bear at least some of the blame for this situation, the district court's judgment cannot be vacated and the appeal is thus moot.

## BACKGROUND

Independent presidential candidates must collect signatures from 5,000 properly registered Ohio voters in order to be placed on Ohio's presidential ballot. O.R.C. § 3513.257(A). Candidates typically employ "circulators"–both volunteers and paid professionals–to gather these signatures. Under Ohio law, a person is not eligible to be a circulator "unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days at the time of the next election." O.R.C. § 3503.06.

Ralph Nader was an independent candidate seeking access to Ohio's ballot for the 2004 presidential election. The Nader campaign employed volunteer and paid circulators who collected 14,473 signatures on its behalf. Ohio's local boards of election declared 8,009 of these signatures invalid for various reasons, including, according to Appellants, failure to comply with Ohio's residency and voter-registration requirements for circulators. Nonetheless, on September 8, 2004, the state Elections Division determined that Nader was left with 6,464 signatures, more than the 5,000 needed to qualify for the ballot.

At this point, the validity of a portion of the remaining signatures was challenged by a group of Ohio electors ("protesters").[1] The Office of the Secretary of State held a three-day hearing, at which both the protesters and Nader were represented by counsel. In a 31-page ruling, the Hearing Officer found 2,756 of the 6,464 signatures invalid. The Hearing Officer invalidated 800 signatures for various technical reasons unrelated to the residency of the circulator, to which Appellants did not object, leaving Nader with 5,646 valid signatures–still sufficient to gain access to the ballot. But then the Hearing Officer invalidated an additional 1,956 signatures after finding that the circulators of the petitions on which these signatures appeared had falsely attested to having Ohio residences. The invalidation of these petitions left Nader with only 3,708 valid signatures, well under the 5,000-signature threshold, and as a result the Secretary of State ("Secretary") ordered that Nader be removed from the election ballot.

Appellants responded by filing an action in the Supreme Court of Ohio on October 4, 2004, and one in federal district court on October 6, 2004. Appellants' complaint to the Supreme Court of Ohio requested the following:

> a writ of mandamus to compel the Secretary of State to order Ohio's 88 county boards of elections to (1) update their voter-registration records, (2) re-review the part-petitions based on the updated records, (3) validate previously invalidated signatures on the part-petitions that were improperly invalidated because of outdated records, and (4) review unreviewed signatures on totally invalidated part-petitions where updated records show that the circulators are duly registered voters. In addition, relators seek a writ of mandamus to compel the Secretary of State to count as valid those signatures on part-petitions that were invalidated because of the circulator-residency requirement of R.C. 3503.06. Finally, relators request a writ of mandamus to compel the Secretary of State to certify as valid Nader's candidacy . . .

---

[1]Protesters are Intervenors-Appellees in this appeal.

upon a finding . . . that at least 1,292 signatures previously invalidated are in fact valid.

*Blankenship v. Blackwell*, 817 N.E.2d 382, 385 (Ohio 2004). Appellants' mandamus action challenged only the 8,009 signatures that had been invalidated by the local election boards prior to the protest action. *Id.* at 386. The Supreme Court of Ohio denied Appellants' requested relief on the ground of laches, noting that they had waited until four months after they began circulating petitions to challenge the circulator-residency requirements, and 31 days after the local election boards' invalidation of the 8,009 signatures to challenge that ruling. *Id.* at 386-87. The court found that Appellants' inexplicably waiting until less than a month before the election to make their various challenges prejudiced the people of Ohio by hampering the processing of absentee ballots, forcing the Secretary and protesters to defend against claims in an expedited fashion with condensed appellate rights, and otherwise threatening Ohio's election preparations. *Id.* at 387-88.[2]

Appellants' complaint in the district court sought a temporary restraining order barring the Secretary from removing Nader from Ohio's election ballot, an injunction compelling the Secretary to count as valid the nominating signatures of qualified electors previously invalidated due to the circulator's failure to meet the residency requirement, and a declaratory judgment that Ohio's residency requirement for circulators violates the First and Fourteenth Amendments to the United States Constitution. The district court found that because Appellants could not identify which of the 8,009 signatures invalidated by the local election boards were invalidated due to the residency requirement, it could not grant the requested relief based on these signatures. The district court also confirmed that Appellants were not challenging the 800 signatures invalidated for various technical reasons by the Hearing Officer during the protest action. The district court, therefore, focused on the remaining 1,956 signatures, and held that because the state had permissibly invalidated these signatures on the basis of fraudulent attestation by the circulators, the injunctive relief would be denied and the court would not reach the constitutionality of the residency requirement. In addition to the doctrine of constitutional avoidance, the district court applied the equitable doctrine of "unclean hands" as a basis for its refusing to grant the declaratory relief requested, holding that the magnitude of the fraud perpetrated by Nader's circulators was "far too great for this Court to consider granting the equitable relief of an injunction in the Plaintiffs' favor." *Blankenship v. Blackwell*, 341 F. Supp. 2d 911, 924 (S.D. Ohio 2004). The district court dismissed Appellants' case on October 12, 2004.

Immediately thereafter, Appellants filed a motion in this court for an emergency injunction and expedited appeal. We refused to grant the injunction, primarily on the ground that Appellants had failed to demonstrate a likelihood of success on the merits:

> The Ohio Secretary of State had state statutory grounds independent of the registration and residency requirements to reject the disputed circulators' petitions: election falsification, a felony in Ohio. The state administrative hearing officer found substantial evidence of fraud by the petition circulators which is supported by evidence in the record below. Given this state law ground, this court will not reach the issue of whether the challenged registration and residency requirements violate the First Amendment. As a result, Appellants cannot demonstrate a likelihood of success on the merits.

*Blankenship v. Blackwell*, No. 04-4259 (6th Cir. Oct. 18, 2004) (internal citation omitted).

---

[2]In addition to its laches ruling, the Supreme Court of Ohio dismissed Appellants' claims for failure to bring the action "in the name of the state on the relation of the person applying," under O.R.C. § 2731.04.

Appellants timely filed their notice of appeal on October 13, 2004, and now ask that we vacate the district court's judgment dismissing their case on the grounds of state-law fraud and unclean hands, and grant them a declaratory judgment that Ohio's residency and voter-registration requirements for circulators violate the First and Fourteenth Amendments.

## ANALYSIS

The threshold issue in this appeal is whether it is appropriate for us even to review Appellants' declaratory judgment claim. The district court found that the circulators' fraudulent conduct foreclosed Nader's access to the ballot in any event, and then used that finding as a basis for employing the doctrines of constitutional avoidance and unclean hands to refuse to grant the requested declaratory judgment as to Appellants' constitutional claims. Appellants admit that because Nader can no longer gain access to Ohio's ballot for the 2004 election, their claim for injunctive relief regarding ballot access is now moot. They contend, however, that their claim for a declaratory judgment is prospective in nature, and therefore not moot. But because the district court's dismissal of the declaratory judgment claim was based on its resolution of the now-moot ballot access claim, the only way we can address the merits of the declaratory judgment claim is to vacate the district court's now-moot judgment solely for the sake of reviewing Appellants' declaratory judgment claim.

Appellants cite *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), as authority for our vacating the district court's judgment on equitable grounds. In that case the Supreme Court noted that 28 U.S.C. § 2106 provides the authority for an appellate court to vacate a judgment lawfully brought before it for review, and further held that Article III of the Constitution does not deny an appellate court the power to vacate a judgment that has become moot while awaiting review. *Id.* at 21-22. The Court then proceeded to outline the equitable parameters that govern whether an appellate court should grant a motion to vacate when the judgment on review is moot. The principle question is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 24. The tradition of vacatur is an "equitable" one, and "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.* at 25. On the other hand, vacatur is an "extraordinary remedy," and it is "[Appellants'] burden, as the party seeking relief from the status quo of the [lower court] judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement" to vacatur. *Id.* at 26. Our decision must also take into account the public interest, because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants . . . ." *Id.* (internal quotation omitted).

On the facts before us, we cannot conclude that Appellants are entitled to the extraordinary equitable remedy of vacatur. First, given the fixed date of the 2004 election, Appellants could and should have acted more expeditiously in asserting their legal rights to ensure that their case was resolved prior to that election. Although their complaint is based in part on the 8,009 signatures invalidated by the local election boards, a decision that was completed by September 3, 2004, *Blankenship*, 817 N.E.2d at 386, Appellants nonetheless waited until October 6–a delay of 33 days–to file their complaint in federal district court. Also, Appellants' circulators began gathering signatures in June 2004 and should have been aware of Ohio's residency requirements for circulators at that time. *Id.* at 387. Most damning of all is the fact that Ralph Nader announced his run for the presidency in mid-February of 2004, some eight and a half months before the election, *see* Press Release, Nader for President 2004, Ralph Nader Announces His Independent Run For President of the United States (Feb. 23, 2004), *at* http://www.votenader.com/media_press/index.php?cid=7; *see also Nader v. Keith*, 385 F.3d 729, 731 (7th Cir. 2004), at which time Appellants should have known of their interest in the application of Ohio's circulator-residency requirements. There is simply no

excuse for Appellants' waiting more than seven months to bring their declaratory judgment claim and leaving the federal courts less than a month before the election to resolve it.

Moreover, although we realize it is inappropriate to base a decision on whether to vacate a mooted case on assumptions about the merits of that case, *U.S. Bancorp*, 513 U.S. at 27-28, here we have the benefit of this court's prior order denying emergency injunctive relief and finding that the Secretary's state statutory ground for invalidating the signatures–"substantial evidence of fraud by the petition circulators"–was "supported by evidence in the record below." *Blankenship v. Blackwell*, No. 04-4259 (6th Cir. Oct. 18, 2004). Given this finding by a previous panel of our court, and in light of the briefs and other judicial opinions issued in this litigation, we are convinced that, rather than challenge from the start the residency requirements that they now contend are unconstitutional, Appellants employed out-of-state circulators who dishonestly represented themselves as meeting Ohio's residency requirements. Appellants' choosing to test the limits of the residency requirement, rather than challenging its constitutionality from the very start, contributed to their case's becoming moot.[3]

In light of Appellants' refusal to challenge Ohio's circulator-residency requirement until more than seven months after Nader announced his candidacy–and even then only after many of the petitions had been disallowed for fraud–we cannot say that they are mere victims of the "vagaries of circumstance." *See U.S. Bancorp*, 513 U.S. at 25. Because at least some of the blame for the mootness of this case lies with Appellants, we cannot grant them the extraordinary equitable remedy of vacating the district court's judgment.

Finally, we note that nothing in our opinion today forecloses Appellants or similarly situated parties from filing suit to challenge the constitutionality of Ohio's residency and voter-registration requirements for nominating-petition circulators in the context of a future election. The sole basis for our dismissing this appeal is that the judgment on which it is based is now moot and thus immune from review; the constitutionality of these provisions as applied to future elections, however, remains an open question.

## CONCLUSION

Therefore, because we lack the authority to vacate the district court's now-moot judgment dismissing Appellants' claim for declaratory relief, we **DISMISS** the appeal for want of jurisdiction.

---

[3]Appellants point out in their brief that the Supreme Court has observed that the unclean hands doctrine applies only when a party commits fraud, thus implying that we should not hold the Nader campaign responsible for the faults of its circulators. Without passing on the merits of the district court's application of the unclean hands doctrine, we note that our equitable allocation of blame for the mootness of Appellants' case requires a different, arguably broader inquiry. And in performing that inquiry, we note that Ohio law treats petition circulators as agents of the entity on whose behalf they are circulating the petitions. *State ex rel. Comm. for the Referendum of City of Lorain Ordinance No. 77-01 v. Lorain County Bd. of Elections*, 774 N.E.2d 239, 248 n.1 (Ohio 2002).