*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0432p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

OPHELIA FORD, et al.,

*Plaintiffs-Appellees,*

*v.*

No. 06-5238

JOHN S. WILDER, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-02031—Bernice B. Donald, District Judge.

Argued: June 6, 2006

Decided and Filed: November 22, 2006

Before: MARTIN, MOORE, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** William N. Helou, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. David J. Cocke, BOGATIN LAW FIRM, Memphis, Tennessee, for Appellees. **ON BRIEF:** William N. Helou, Janet M. Kleinfelter, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. Matthew P. Cavitch, BOGATIN LAW FIRM, Memphis, Tennessee, for Appellees.

MOORE, J., delivered the opinion of the court in which, MARTIN, J., joined. ROGERS, J. (pp. 7-8), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendants-Appellants appeal from the district court's denial of their motion to dismiss and grant of declaratory relief to the Plaintiffs-Appellees. Ophelia Ford ("Ford") ran as the Democratic candidate in a special election for a seat in the Tennessee Senate; she defeated her Republican opponent by a small margin, and he sought to void the election on the basis of alleged voting irregularities. Ford and several voters from her district (the "plaintiffs") filed suit against the Tennessee senators, asserting a variety of constitutional and statutory claims as to why the senate was acting impermissibly in seeking to void the special

1

election.  The district court entered declaratory relief in favor of the plaintiffs.  John Wilder, the Lieutenant Governor and Speaker of the Senate, and the senate itself (the "defendants") argue on appeal that the district court lacked subject-matter jurisdiction over the plaintiffs' claims and that they are entitled to immunity from suit.  For the reasons explained below, we **DISMISS** the appeal for lack of jurisdiction and **REMAND** the case to the district court to consider the issue of whether the plaintiffs are entitled to an award of attorney fees.

## I.  BACKGROUND

After Senator John Ford left the Tennessee Senate, Ophelia Ford, Terry Roland, and Robert Hodges ran in the special election held on September 15, 2005 to fill the vacancy.  Ford—the Democratic candidate—won the election by thirteen votes.  Roland—the Republican candidate—asked the senate to void the election, on the basis of alleged voting irregularities.[1]  John Wilder, who is the Lieutenant Governor and Speaker of the Senate, convened a Special Ad Hoc Committee ("Committee") to investigate this matter.  After the Committee began gathering evidence but before it concluded its examination, Senator Ron Ramsey filed Resolution 7002, which would void the special election.  The entire senate, sitting as a Committee of the Whole, voted 17-14 in favor of Resolution 7002 on January 17, 2006.  The senate was scheduled to take a final vote on Resolution 7002 on January 19, 2006.

On January 18, 2006, Ford and several citizens of Senate District 29 filed a complaint against each of the Tennessee senators in federal district court, seeking to enjoin them from voiding the special election.  The plaintiffs alleged that "the standards and procedures for reviewing the eligibility of voters in District 29 are substantially different than those that are applied by the [election officials] in other such cases throughout the state."  Joint Appendix ("J.A.") at 21 (Compl. for Declaratory J. and Injunction Under the Federal Voting Rights Act ("Compl. for Declaratory J.") ¶19).  The district court entered a temporary restraining order enjoining the defendants "from proceeding to take any action to affirm or void the election in Senate District 29 pending a hearing on the Plaintiffs' Application for a preliminary injunction in this cause."  J.A. at 26 (Temporary Restraining Order).  On January 24, 2006, the defendants filed a motion to dismiss, claiming that the district court lacked subject matter jurisdiction and that the plaintiffs had failed to state a claim upon which relief could be granted.  The district court held a hearing the following day, at the conclusion of which it extended the temporary restraining order until it addressed the parties' claims.

The district court issued an order on February 1, 2006, granting the plaintiffs' motion for declaratory relief on the basis of the plaintiffs' Due Process, Equal Protection, and Voting Rights Act claims.  In this order, the district court explained that "[t]he Senate, in its wisdom may vote to void an election, but only after it has developed and applied statewide uniform standards that govern which votes will be counted, practicable procedures to implement them, with an orderly mechanism for judicial review of disputed matters that may arise."  J.A. at 135 (Dist. Ct. Order at 31).  The district court also denied the plaintiffs' request for injunctive relief, dismissed the plaintiffs' claim for relief pursuant to 42 U.S.C. § 1973, and denied the defendants' motion to dismiss "in all remaining respects."  J.A. at 135.  The defendants timely appealed this order.

---

[1] Roland asserted that the following improper votes were counted in the special election: (1) several votes cast on behalf of dead citizens; (2) votes cas[t] by several felons who had not had their voting rights restored; (3) votes cast by several citizens who were not residents of the 29th District; and, (4) votes cast by voters who had not signed both the application for ballot and the poll book.
Joint Appendix ("J.A.") at 60 (Mem. in Support of State Defs.' Mot. to Dismiss at 2).

The senate took no further action pursuant to Resolution 7002 after the district court's order.[2] On April 17, 2006, the Committee issued a report recommending that the Special Election be voided. The Committee found that there were 12 illegal votes cast for Ford and that the election should be set aside. Some of the plaintiffs sought an injunction from the district court to prevent the senate from voting on the Committee's report;[3] the district court declined to enjoin the defendants. The senate adopted the Committee's report on April 19, 2006, by a 25 to 6 vote. Senator Ford was accordingly removed from office. The senate adjourned, and the election for the next District 29 senator was held on November 7, 2006.[4]

The plaintiffs filed a new complaint in district court,[5] seeking the following relief:

(1) a declaratory judgment that the voiding of the Senate District 29 election results by the Defendants violated the Plaintiffs' rights under the federal and Tennessee Constitutions and federal civil rights statutes and that the Report and Resolution adopted by the Tennessee Senate be declared to be void and unenforceable;

(2) an order temporarily and permanently enjoining the Senate Defendants from voiding the election results unseating Senator Ford and carrying out any ministerial duties to effect that result, including denying her ability to vote on Senate matters and have her vote counted;

(3) an order enjoining the Shelby County Commission and its Chief Administrator from appointing an interim Senator to represent Senate District 29 and carrying out any ministerial duties to effect such a result; and

(4) any other relief, including attorneys' fees and costs, deemed appropriate by this Court.

Compl. for Declaratory J. and Injunction to Restore Election Under the Fed. Voting Rights Act ("Compl. to Restore Election") at 15-16. The district court granted a preliminary injunction to prevent the senate from "taking any action to fill the vacancy in Senate District 29, pending a final hearing on the merits or until further orders of the Court." Preliminary Injunction in case no. 2:06-CV-2241 dated May 26, 2006 at 2. The parties are scheduled to appear before the district court for a bench trial in December 2006.

## II. ANALYSIS

The defendants argued at oral argument and in a subsequent letter brief that we should dismiss the case as moot in light of the fact that the election has been voided. The plaintiffs admit that their claims for injunctive relief were mooted by the senate's actions in voiding the special election, but they assert that they have an ongoing interest in the declaratory relief issued by the

---

[2] At oral argument, the plaintiffs' counsel stated that the senate withdrew Resolution 7002; however, the defendants' counsel stated that Resolution 7002 "died" when the senate adjourned, but that it was not affirmatively withdrawn. In their subsequent letter brief regarding mootness, the plaintiffs state that "[t]he Senate did not take any further action to pass Senate Resolution 7002 and at the end of the special session on February 6, 2006, the Resolution was dropped from the Senate calendar." Appellees Letter Br. at 2.

[3] The plaintiffs argued that the senate "is poised to act in a manner inconsistent with this Court's order of February 1, 2006." Mem. of Law in Support of Mot. to Enjoin Defs. Pursuant to Fed. R. Civ. P. 62, 65, and Fed. R. App. P. 8 at 3.

[4] According to unofficial results, Ford won the election. *See* Nov. 7, 2006 General Election Unofficial Results 5 (Nov. 8, 2006), http://www.state.tn.us/sos/election/results/2006-11/en6ts.pdf.

[5] This complaint, which was filed on April 25, 2006, is before the same district court judge, but it has a different docket number (No. 2:06-CV-2241) from the case before us (No. 2:06-CV-2031).

district court. After reviewing the exact relief sought by the plaintiffs and granted by the district court, we agree with the defendants that this case is moot.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Regardless of whether the parties raised the issue of mootness, "our first inquiry on appeal must be whether this case is moot." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). We must so inquire because "'[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue.'" *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson*, 119 F.3d at 458 (internal quotation marks omitted).

The relief sought by defendants on appeal in this case is a reversal of the district court's grant of declaratory relief to the plaintiffs. The plaintiffs requested "a declaratory judgment that the voiding of the Senate District 29 election results *as contemplated by the Defendants* would violate the Plaintiffs' rights under the Constitution and the Voting Rights Act." J.A. at 23 (Compl. for Declaratory J. at 11) (emphasis added). We have explained that

> [W]hen considering the potential mootness of a claim for declaratory relief, "the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 459 (6th Cir. 2004) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)) (internal quotation marks omitted). Because Resolution 7002 is no longer before the Tennessee Senate, and the voiding of the District 29 election results has already occurred, the relief sought will have no effect on the parties' current legal interests. The only possible interest in this appeal is to establish a precedent that could make a difference in the new lawsuit; however, an order by this court as to the propriety of the declaratory relief issued on February 1, 2006, before the senate acted to void the District 29 election results on April 19, 2006, is inappropriate unless there is a "link between [the senate's] past practices and the current interests of the parties."[6] *Id.* at 459. There is no such link, because the senate explicitly chose not to take further action with regard to Resolution 7002 and instead voided the election on

---

[6] In *Coalition for Government Procurement*, we held that the plaintiff's claims against the defendant were not moot even though the defendant "completed the challenged activity." *Coalition for Gov't Procurement*, 365 F.3d at 458. We explained that "[t]he proposed relief sought demonstrates that the Coalition seeks more than a declaration that UNICOR unlawfully and significantly expanded from 1991-1995. The Coalition has argued throughout the litigation that the unauthorized significant expansions resulted in its loss of $450 million in sales." *Id.* at 459-60.

the basis of the Committee's investigation and April 17, 2006 report.[7]　Accordingly, the case is moot.[8]

As the case is moot, we must determine whether to vacate the district court's judgment or simply to dismiss this appeal for lack of jurisdiction.　We have the authority to vacate a district court's judgment pursuant to 28 U.S.C. § 2106,[9] and we are not prevented by Article III from vacating a judgment that has become moot on appeal.　*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21-22 (1994); *Blankenship v. Blackwell*, 429 F.3d 254, 257-58 (6th Cir. 2005).　"When a civil case becomes moot pending appellate adjudication, '[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.'"　*Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (alteration and omissions in original) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).　"Vacatur 'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review."　*Id.* (quoting *Munsingwear*, 340 U.S. at 40).　"Vacatur is in order when mootness occurs through happenstance - circumstances not attributable to the parties - or, . . . the 'unilateral action of the party who prevailed in the lower court.'"　*Id.* at 71-72 (quoting *U.S. Bancorp*, 513 U.S. at 23).

"In [*U.S. Bancorp*], the Court clarified that vacatur is an equitable remedy rather than an automatic right."　*Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001).　"[V]acatur is an 'extraordinary remedy,' and it is '[the defendants'] burden, as the party seeking relief from the status quo of the [lower court] judgment, to demonstrate . . . equitable entitlement' to vacatur."　*Blankenship*, 429 F.3d at 258 (quoting *U.S. Bancorp*, 513 U.S. at 26) (third alteration in original).　The plaintiffs contend that vacatur is inappropriate here because it was the defendants' actions that led to the case being moot.　The question of fault is central to our determination regarding vacatur.　*Id.* at 257.　*U.S. Bancorp* states that "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action."　*U.S. Bancorp*, 513 U.S. at 24.　In addition, "'[j]udicial precedents are presumptively correct and valuable to the legal community as a whole.　They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.'"　*Id.* at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)); *quoted in Blankenship*, 429 F.3d at 258.　"'[A]bsent unusual circumstances, the appellate vacatur decision under *Bancorp* is informed almost entirely, if not

---

[7] At oral argument, the plaintiffs explained that the special election was voided on the basis of an "entirely different resolution" from Resolution 7002.　It is clear that the Committee continued its investigation and issued its recommendation on the basis of different evidence than that used to support Resolution 7002.　In their original complaint, the plaintiffs alleged as follows:

> In support of [Resolution 7002], Senator Ramsey and others indicated that there was no reason to wait for further evidence and that the allegations regarding residency and mistakes by the polling officials with regard to signing both the polling poll book and the application for ballots were sufficient to call the election into question without specific evidence of wrongdoing by voters.

J.A. at 19-20 (Compl. for Declaratory J. ¶ 14).　The Committee, by contrast, sent out letters to the 44 voters whose residency was contested and gathered affidavits and testimony regarding the contested votes.　Compl. to Restore Election ¶¶ 24-32.　The Committee did not base its recommendation to void the special election on the failure of voters to sign both a poll book and an application for ballot.

[8] Plaintiffs' counsel conceded as much at oral argument, explaining that his main concern with respect to this case was to seek an award of attorney fees.

[9] Section 2106 states:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

entirely, by the twin considerations of fault and public interest.'" *Khodara*, 237 F.3d at 194-95 (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000)).

Because the defendants were responsible for the mooting of this case,[10] the precedent described above supports dismissal of the appeal, rather than vacatur. The defendants' only argument in favor of vacatur is the "possibility that the judgment of the court below could influence the litigation of this issue in the future." Appellants Letter Br. at 4-5. However, this argument could apply to every case that becomes moot pending appeal, and the defendants have not shown that the public interest would be furthered by vacatur. Further, we agree with the plaintiffs that the case should be remanded to the district court for consideration of attorney fees in the first instance.[11] *See Constangy, Brooks & Smith v. NLRB*, 851 F.2d 839, 842 (6th Cir. 1988) (dismissing the appeal for lack of jurisdiction, refusing to vacate the district court's judgment, and remanding for further proceedings in light of the fact that a motion for attorney fees was pending before the district court); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (holding that the district court was permitted to award attorney fees even though the case became moot), *cert. denied*, 422 U.S. 1048 (1975); *see also Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980) ("[A] determination of mootness does not prevent an award of attorneys' fees on remand."), *cert. denied*, 451 U.S. 993 (1981). Therefore we hold that vacatur of the district court's judgment is unwarranted, and we simply dismiss the appeal for lack of jurisdiction.

### III. CONCLUSION

For the reasons discussed above, we **DISMISS** the appeal for lack of jurisdiction and **REMAND** the case to the district court to consider the issue of whether the plaintiffs are entitled to an award of attorney fees.

---

[10] This determination of "responsibility" does not, as the dissent suggests, ignore the intent of the parties. The voluntary action of the defendants occurred soon after the district court granted declaratory relief against those very parties, raising the inference that "mootness was [their] purpose or that [they] knew or should have known that [their] conduct was substantially likely to moot the appeal." *Russman v. Bd. of Educ.*, 260 F.3d 114, 122 (2d Cir. 2001). *U.S. Bancorp* instructs us to apply this very fault determination. *U.S. Bancorp*, 513 U.S. at 24.

   This is no less true simply because it was a legislature that caused the case to become moot. The dissent is correct that we should carefully determine responsibility in cases where other branches of government stand as defendants, particularly where, as in the cases that the dissent cites, legislation moots a case brought against members of the executive branch. *See Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 879-80 (9th Cir. 2006); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 353 (D.C. Cir. 1997). In this case, the defendants' legislative action mooted a case brought directly against them in circumstances that they should have known would moot the appeal. *Cf. Cammermeyer v. Perry*, 97 F.3d 1235, 1239 (9th Cir. 1996) (declining to grant vacatur because the defendants mooted the case by themselves replacing the challenged regulation); *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 76 F.3d 1142, 1144-45 (10th Cir. 1996) (declining to grant vacatur because "the City unquestionably caused the mootness by withdrawing the policy the district court had found invalid").

[11] The plaintiffs filed a motion for attorney fees on February 15, 2006. On March 2, 2006, the parties filed a joint motion to stay the proceedings before the district court regarding attorney fees; the district court granted this motion.

---

### CONCURRING IN PART, DISSENTING IN PART

---

ROGERS, Circuit Judge, concurring and dissenting. I join the majority in concluding that the civil action that plaintiffs brought against the Tennessee Senate and the Lieutenant Governor and Speaker of the Senate is now moot. I dissent because vacatur is appropriate in this context.

Focusing exclusively on "fault and public interest," in my view, ignores an important element of the vacatur analysis, namely intent. When evaluating whether to vacate district court opinions in moot cases, courts focus on the motives of the party that caused mootness. *See, e.g.*, *Russman v. Bd. of Educ.*, 260 F.3d 114, 122 (2d Cir. 2001) (finding that for "conduct to constitute 'forfeiture' of the benefit of vacatur . . . we believe [that the party that caused the case to become moot] must have intended the appeal to become moot, either in the sense that mootness was his purpose or that he knew or should have known that his conduct was substantially likely to moot the appeal."); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998) ("[T]he district court should consider the motives of the party whose voluntary actions mooted the case."). The need to focus on intent is particularly great when a legislature caused a case to become moot. *See Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351-53 (D.C. Cir. 1997) (requiring proof "that the legislation was enacted in order to overturn an unfavorable precedent"). A legislature "may act out of reasons totally independent of the pending lawsuit or because the lawsuit has convinced it that the existing law is flawed," and constitutional concerns "should make [courts] wary of impugning the motivations that underlie a legislature's actions." *Id.* at 352; *see also Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 195 (3d Cir. 2001) (Alito, J.).

In this case, there simply is no evidence that the defendants acted with the intent to moot Ford's civil action against them. To the contrary, when voting on the Ad Hoc Committee's recommendations, defendants were probably not even aware that they were relinquishing the right to raise defenses in future cases, and the mere fact that the defendants mooted the case approximately two and a half months after the district court granted declaratory relief is insufficient to raise an inference of an intent to vacate the case. *See Am. Games, Inc.*, 142 F.3d at 1166 (no intent even though the case became moot while pending on appeal); *Khodara*, 237 F.3d at 186, 192, 195 (finding no intent even though case became moot less than two months after oral arguments).

Additional public interest concerns support vacatur. First, while it is normally inappropriate to base a decision on whether to vacate a mooted case on assumptions about the merits of that case, here Ford conceded that the Tennessee Senate was not a proper party to the lawsuit. *See Blankenship v. Blackwell*, 429 F.3d 254, 258 (6th Cir. 2005). The public interest in *res judicata* diminishes when all parties agree that the district court erred. Second, the district court explicitly declined to address defendants' sovereign immunity argument.

I conclude by noting the limited issue-preclusion and claim-preclusion reach of the district court's decision. First, the district court's opinion does not preclude defendants from raising similar arguments in future cases against other plaintiffs. *United States v. Mendoza*, 464 U.S. 154 (1984); *Idaho Potato Comm. v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 713-14 (9th Cir. 2005) (applying the *Mendoza* holding to state actors); *Hercules Carriers, Inc. v. Claimant State of Florida, Dep't of Transp.*, 768 F.2d 1558, 1578-79 (11th Cir. 1985) (same). Second, in future cases that plaintiffs in this case bring, plaintiffs cannot rely on the district court's decisions of "unmixed questions of law" in "successive actions involving unrelated subject matter[s]." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 171 (1984) (quoting *Montana v. United States*, 440 U.S. 147, 162 (1979)). Third, case law appears to support the conclusion that *res judicata* would not prevent defendants from raising sovereign immunity in subsequent litigation with the plaintiffs in this case,

particularly given the terse treatment in the district court's opinion. *See Jordon v. Gilligan*, 500 F.2d 701, 710 (6th Cir. 1974); *Pacific Rock Corp. v. Perez*, 2005 Guam 15, 2005 WL 2508136 (No. CIVA 03-010, Oct. 11, 2005); *but see United States v. County of Cook, Ill.*, 167 F.3d 381, 389-90 (7th Cir. 1999).