NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0681n.06

No. 13-5988

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 02, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KNC INVESTMENTS, LLC, a California Limited Liability Company, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF KENTUCKY |
| LANE'S END STALLIONS, INC., a Texas Corporation, | ) ) ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE: WHITE, DONALD, and O'MALLEY, Circuit Judges.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** The instant appeal involving KNC Investments, LLC ("KNC") and Lane's End Stallions, Inc. ("Lane's End") arose following this Court's remand to the district court to determine whether subsequent events mooted the issues KNC raised in its prior appeal. *See KNC Invs., LLC v. Lane's End Stallions, Inc.*, 504 F. App'x 467, 467-68 (6th Cir. 2012). On remand, the district court found that no live case or controversy remained and accordingly granted Lane's End's motion to dismiss the case for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal Circuit, sitting by designation.

I.

Lane's End serves as Syndicate Manager for the owners of interests in the Lemon Drop Kid Syndicate ("the Syndicate"). Lemon Drop Kid is a Thoroughbred horse. The agreement establishing the Syndicate transferred ownership of Lemon Drop Kid from the original, single owner into syndicate form to provide for the horse's management and supervision. The Syndicate consists of forty equal fractional ownership interests ("Fractional Interests"). A holder of a Fractional Interest is an Owner. Each Owner has various rights under the agreement, including breeding rights.

On February 28, 2011, KNC purchased Fractional Interest No. A05 in the Syndicate from its previous Owner. At the time of this purchase, the Original Syndicate Agreement ("Original Agreement"), effective November 30, 2000, governed the rights and responsibilities of the Owners and the Syndicate Manager. The Original Agreement contained language providing that it could be "altered, amended or modified with the affirmative vote of the Owners holding 34 of the 40 Fractional Interests."

In early March of 2011, KNC began making demands of Lane's End regarding the other Owners of Fractional Interests in the Syndicate. Specifically, KNC desired to obtain the names and contact information of the other Owners. On March 8, 2011, Lane's End responded to KNC's requests. Lane's End indicated that it would seek permission from the other Owners in the Syndicate to disclose their identities and contact information pursuant to section 6.1 of the Original Agreement, which provided that a majority vote of the Owners of the Fractional Interests would decide any question submitted. All the other Owners except KNC voted against

disclosing their identities and contact information, and Lane's End refused to provide such information to KNC.

After the other Owners rebuffed KNC's requests for information, on March 22, 2011, KNC filed suit against Lane's End, as Syndicate Manager, in the United States District Court for the Eastern District of Kentucky, asserting four claims for relief and seeking declaratory relief, damages, and complete accounting of the Syndicate's financial records. In November of 2011, the district court granted both Lane's End's motion to dismiss some of KNC's claims and Lane's End's motion for summary judgment as to KNC's other claims. Following the district court's denial of KNC's motion to reconsider its November 2011 decision, KNC appealed.

Before this Court adjudicated KNC's prior appeal, the other thirty-nine Owners of Fractional Interests in the Syndicate voted to amend the Original Agreement and expressly to ratify Lane's End's past actions as Syndicate Manager. Lane's End then filed a motion to dismiss KNC's appeal as moot based on the Amended Syndicate Agreement ("Amended Agreement"). *KNC Invs.*, 504 F. App'x at 467. This Court remanded to the district court to determine in the first instance whether the Amended Agreement mooted KNC's claims. *Id.* at 468. On remand, the district court found that no live case or controversy remained and accordingly granted Lane's End's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. KNC again appealed to this Court.

II.

A.

In granting Lane's End's motion to dismiss for lack of subject-matter jurisdiction, the district court decided only the question of whether KNC's claims are now moot in light of the Amended Agreement. Because the district court considered only the issue of mootness on remand, we confine our review to that issue. *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) ("[T]he general rule is that this court will not consider issues not raised in the district court."); *see also Norfolk & W. Ry. Co. v. City of Oregon*, 210 F.3d 372, at *4 (6th Cir. 2000) (Table) ("The district court limited its remand to that issue and, likewise, our review is similarly limited." (footnote omitted)).

We generally review de novo a district court's decision to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). If the lower court, however, "does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a 'factual' challenge rather than a 'facial' challenge, and we review the district court's factual findings for clear error." *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

Lane's End's challenge to the existence of subject-matter jurisdiction in this case is a factual one because the district court analyzed the complaint in light of the Amended Agreement, which Lane's End contends deprives the court of a "factual predicate[]" for jurisdiction. *Id.* Language from this Court's prior order buttresses our conclusion: "Perhaps this case is moot, or

perhaps the new facts relate to the merits of the dispute between KNC and Lane's End.  Either way, . . . the district court is best suited to find any relevant facts and to determine in the first instance whether a live controversy remains."  *KNC Invs.*, 504 F. App'x at 468.  We therefore review the district court's factual findings for clear error and its legal conclusions de novo.  *See Howard*, 382 F.3d at 636.

B.

This Court has stated that "'[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.'"  *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010) (quoting *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006)).  The "heavy burden of demonstrating mootness" lies with the party claiming that the case is moot.  *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530-31 (6th Cir. 2001) (citing *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)).  We agree with the district court that Lane's End met its burden to prove the mootness of this controversy in light of the Amended Agreement, which now expressly ratifies Lane's End's past conduct.

KNC's Amended Complaint asserts four claims against Lane's End.  Count I seeks a declaratory judgment regarding KNC's alleged rights to inspect the Syndicate's books and records, to an un-redacted purchase offer, and to information regarding the advancement of Syndicate funds based on the Original Agreement.  Count II seeks a declaratory judgment regarding KNC's alleged right to inspect the Syndicate's books and records based on the Kentucky Business Corporations Act, Ky. Rev. Stat. Ann. § 271b.16-020.  Count III seeks compensatory and punitive damages for Lane's End's alleged violations of its fiduciary duties to the Owners of the Syndicate based on the Original Agreement.  Count IV seeks a full and

complete accounting of all Syndicate funds based on Kentucky's law of agency and the Original Agreement. In the prior appeal, this Court affirmed the district court's dismissal of Count II. *KNC Invs.*, 504 F. App'x at 468 ("We thus need no additional facts to conclude that the district court correctly rejected KNC's claims under the Business Corporations Act."). The only claims remaining on remand, then, were those KNC asserted based on the Original Agreement.

Events that transpired after KNC filed its Amended Complaint, however, prevent it from asserting any claims under the Original Agreement. The other thirty-nine Owners of Fractional Interests in the Syndicate—all save for KNC—voted in May and June of 2012 to amend the Original Agreement. The Amended Agreement addresses the actions taken by Lane's End that KNC complains of in this litigation. Specifically, the language of the Amended Agreement confirms that the identities of individual Owners are confidential and Lane's End cannot disclose them absent a majority vote. The language of the Amended Agreement also expressly ratifies the actions taken by Lane's End that KNC alleges violated its rights under the Original Agreement. Kentucky law permits such ratification, even with the consent of a simple majority of the owners. *See Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp.*, No. 2007-CA-000280-MR, 2008 WL 820950, at *5-6 (Ky. Ct. App. Mar. 28, 2008) ("The appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.").[1]

---

[1]We recognize that the *Weisbord* court reached this conclusion in a case where the syndicate agreement was not amended, which is different from the situation here. We cite this case only to demonstrate that the other Owners of Fractional Interests in the Syndicate were permitted under Kentucky law to ratify Lane's End's past conduct without KNC's consent.

Accordingly, the district court's factual conclusion—based on the affidavit submitted by Thomas Hyams, Secretary and Treasurer of Lane's End—that the other thirty-nine Owners in the Syndicate followed the proper procedures for ratifying Lane's End's prior actions is not clearly erroneous. KNC failed to present probative evidence to the district court rebutting Hyams' affidavit, and the Amended Agreement specifically ratifies all of Lane's End's past actions. This Court thus cannot grant any relief that "would . . . make a difference to the legal interest of the parties." *Wedgewood*, 610 F.3d at 348 (quoting *Ford*, 469 F.3d at 504).

## C.

KNC nonetheless contends that the district court committed two legal errors in granting Lane's End's Rule 12(b)(1) motion to dismiss. First, KNC argues that the district court erred by denying its request for discovery on remand because KNC "should have been given an opportunity to investigate how the amendments occurred and whether Lane's End went beyond its role as Syndicate Manager in seeking and obtaining the amendments." Appellant Br. at 38. Second, KNC argues: "Lane's End could not effectuate an amendment to the Original Syndicate Agreement without the consent of one of its parties (KNC), especially when its attempt to do so was intended to void certain provisions of that contract that existed when KNC agreed to become a party to it." *Id.* at 42.

The district court properly rejected KNC's request for discovery. In *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981), this Court held that whether or not to allow discovery prior to deciding a motion to dismiss for lack of jurisdiction is within the discretion of the district court. *Id.* at 1240 ("A ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown."). The instant case is analogous to

*Chrysler Corp.* because KNC did not present any probative evidence to the district court to support its allegations that Lane's End acted improperly during the amendment process in May and June of 2012. *See id.* ("Inasmuch as Chrysler failed to offer any factual basis for its allegations of conspiracy, it was well within the trial court's discretion to deny Chrysler's request for discovery."). The district court therefore did not abuse its discretion in denying KNC's discovery request.

KNC's second argument, that the other Owners of the Syndicate could not amend the Original Agreement without KNC's consent, lacks merit. In *Kentucky Home Mutual Life Insurance Co. v. Leitner*, 196 S.W.2d 421 (Ky. 1946), Kentucky's highest court held the opposite. Where a contract contains a provision for amendment, even if that provision allows for unilateral modification by only one party, there is no blanket requirement under Kentucky law that all parties must consent to an amendment before it binds them. *See id.* at 423 ("It is stipulated that the insured was bound by the original reinsurance agreement. Since it provided for amendments thereto, he was likewise bound by the amendments, unless the Company was estopped or unless a consideration separate and distinct from the original consideration is required to support the amendment."). KNC's assent to the amendment provision in the Original Agreement thus precludes it from challenging the validity of subsequent amendments enacted pursuant to that provision, absent certain exceptions not present in this case. *See id.* (requiring the objecting party to "accept the contract as it was made").[2] Because Kentucky law does not prohibit the other thirty-nine Owners of Fractional Interests in the Syndicate from ratifying

---

[2]Because we conclude that the other thirty-nine Owners of Fractional Interests in the Syndicate properly ratified Lane's End's conduct, we do not address whether the Owners properly could amend the agreement retroactively.

Lane's End's conduct without KNC's consent, the district court did not err when it granted

Lane's End's motion to dismiss for lack of subject-matter jurisdiction.

III.

Accordingly, we **AFFIRM** the judgment of the district court.

**HELENE N. WHITE, Circuit Judge**, concurring and dissenting.

The majority opinion concludes that KNC's claims against Lane's End are moot because the Amended Agreement "now expressly prohibits the relief sought by KNC." Maj. Op. at 5. I respectfully dissent from that determination. I would, however, affirm because I agree with the district court's dismissal on the merits.

## I.

KNC brought four claims in its amended complaint: (I) for a declaratory judgment regarding KNC's alleged rights (a) to inspect the Syndicate's books and records, (b) to an un-redacted purchase offer, and (c) to information regarding the advancement of Syndicate funds to one Owner, all based on the Original Agreement; (II) for a declaratory judgment regarding KNC's alleged right to inspect the Syndicate's books and records under the Kentucky Business Corporations Act, Ky. Rev. Stat. Ann. § 271b.16-020; (III) for compensatory and punitive damages for Lane's End's alleged violations of its fiduciary duties to KNC, based on Lane's End's (a) refusal to provide KNC full access to the books and records, (b) advancing Syndicate funds to one Owner, and (c) polling and attempting to influence the Owners to "ratify" its conduct; and (IV) for an accounting of all Syndicate funds based on Kentucky's law of agency and the Original Agreement. The district court dismissed the claims, and KNC appealed.

While KNC's appeal was pending, thirty-nine of the forty members of the Syndicate voted to amend the Syndicate Agreement and to ratify Lane's End's challenged conduct. The Amended Agreement makes its changes effective retroactive to the date of the adoption of the Original Agreement and purports to supersede that Agreement entirely. This court affirmed the dismissal of Count II and remanded the case to the district court to determine whether the Amended Agreement rendered moot KNC's remaining claims. On remand, the district court

found that a live controversy no longer exists between the parties because the Amended Agreement "now expressly bars the exact relief requested by KNC in its original suit for declaratory relief seeking a right to inspect the books and records of the Syndicate," and because the Owners "expressly ratified Lane's End's actions in not providing KNC with their identities and contact information." The district court did not separately address KNC's claim for damages except that it rejected a *new* argument that KNC made, post-remand, that Lane's End had continued to engage in conduct contrary to its fiduciary duties when it wrote the Owners and asked them to approve the Amended Agreement. The district court found that argument barred by specific language in the Amended Agreement providing that the Syndicate Manager can express its views to Owners regarding matters in issue.

In this appeal, KNC appeals only the district court's determination that Count III, its claim for damages, is moot.[3] It argues that the district court should have granted its request for discovery into the validity of the process used to amend the Original Agreement, and that the other Owners of the Syndicate could not amend the Original Agreement without KNC's consent, and could not "effectively and after-the-fact ratify" Lane's End's breach of the Original Agreement on KNC's behalf. I agree with the majority that the district court had the discretion to deny further discovery, but I do not agree that the Amended Agreement renders KNC's damages claim moot.

---

[3]Lane's End contends that KNC waived appeal of Count III by failing to brief it in its opening brief in the first appeal in this case, and that therefore KNC has waived appeal of all its claims. I disagree. Count III is a claim for punitive and compensatory damages based on the allegedly wrongful conduct described in Count I. In its opening brief in the first appeal, KNC stated "[t]his Appeal relates primarily to the District Court's dismissal of Count I" and asked this court, if it found reversal warranted on Count I, to remand for the district court for determination of the remaining counts "based upon the outcome of Count I." Because KNC made arguments relevant to the reversal of Count III in its opening brief in the first appeal, and asked for reversal of the district court's decision on that count, I would not find that it waived appeal of the claim.

**II.**

As KNC apparently concedes, its claims for declaratory and injunctive relief under the Original Agreement are now moot because the Original Agreement no longer exists to enforce. *See* KNC Br. 6 n.2 (stating it does not appeal the dismissal of those claims). But the Owners' adoption of the Amended Agreement does not necessarily moot KNC's claims for *damages* because this court can still redress a past violation of the Original Agreement by awarding damages. *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010) ("'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.'") (citation omitted); *see also* 13C *Fed. Prac. & Proc. Juris.* § 3533.3 (3d ed.) ("Untold numbers of cases illustrate the rule that a claim for money damages is not moot, no matter how clear it is that the claim arises from events that have completely concluded without any prospect of recurrence.").

Lane's End asserts, essentially, two reasons that the Amendment Agreement nonetheless renders KNC's damages claims moot: (1) in the Amended Agreement, the Owners ratified, i.e. retroactively sanctioned, all the conduct of Lane's End that KNC claims was in violation of the Agreement and Lane's End's fiduciary duties; and (2) the Amended Agreement purports to supersede the Original Agreement entirely, as though it never existed.

**A. Ratification**

The Original Agreement provides that "the relationship of the Owners to the Syndicate Manager [is] that of principal and agent." Under Kentucky law, a principal may ratify or affirm its agent's otherwise unauthorized conduct. *See Stewart v. Mitchell's Adm'x*, 301 Ky. 123, 126 (1945) ("As applied to the law of agency, ratification is the affirmance of an act by one for or in behalf of another at a time when he had no authority to do the act for the one in whose name it

was done."). "An otherwise-effective ratification eliminates claims that the principal has against the agent, including claims for breach of fiduciary duty." Restatement (Third) of Agency § 4.02(b). Accordingly, if KNC ratified Lane's End's conduct, all KNC's claims against Lane's End would be extinguished, and therefore moot, even claims for damages.

The Original Agreement provides that a vote of 34 out of 40 Owners may alter, amend, or modify the Agreement, and a simple majority of Owners may resolve "all questions properly submitted." The Owners' express statement in the Amended Agreement that they ratified Lane's End's conduct is undoubtedly effective to ratify the conduct on behalf of the Owners who participated in the vote to amend, but the question is whether it is effective with respect to KNC.

The majority opinion concludes that Kentucky law permits a simple majority of syndicate owners to ratify an agent's conduct on behalf of the remaining owners. Maj. Op. at 6 ("Kentucky law permits such ratification, even with the consent of a simple majority of the owners.") (citing *Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp.*, No. 2007-CA-000280-MR, 2008 WL 820950, at *5–6 (Ky. Ct. App. Mar. 28, 2008), for its observation that "[t]he appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate."). But the quoted sentence in *Weisbord* was not a holding; it was dicta. In *Weisbord*, the plaintiffs challenged the sale of one member's Fractional Interest, arguing that in coordinating the sale, the Syndicate Manager had deviated from the terms of the Syndicate Agreement governing such sales. *Id.* at *2. The court affirmed the dismissal of the plaintiffs' claims for declaratory and injunctive relief. It found, first, that the plaintiffs were estopped from challenging the sale because they themselves had sought a waiver from the terms of the Agreement. *Id.* at *4. Second, it addressed the plaintiffs' argument "that the ratification

was invalid because it was not approved by all the members of the syndicate, but was approved only by a majority." *Id.* at *6. The court made the observation quoted above that the plaintiffs had provided "no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate." *Id.* And then in a footnote immediately following that observation, the court stated: "*Regardless of whether the appellants have a valid argument in this regard*, they are without remedy due to estoppel as we have explained above." *Id.* at *6 n.3 (emphasis added). Thus, the observation the majority relies on would not bind subsequent Kentucky courts because it is dicta, *see Bd. of Claims of Kentucky v. Banks*, 31 S.W.3d 436, 439 n.3 (Ky. Ct. App. 2000), and because it appears in an unpublished decision, *see* Ky. St. RCP 76.28(4)(c). For a federal court sitting in diversity, like this one, the observation is a relevant data point, but is not controlling on its own. *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) ("When deciding a diversity case under state law," where the state's highest court has not decided the question, "a federal court must . . . ascertain the state law from 'all relevant data'" including "the state's appellate court decisions, . . . the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states") (citations omitted).

The Kentucky Supreme Court has applied the Restatement (Third) of Agency (2006) to questions of agency law, *see Pannell v. Shannon*, 425 S.W.3d 58, 84 (Ky. 2014) (citing §§ 4.01, 4.02 in a discussion of ratification), as well as American Jurisprudence, Second Edition, on Agency, *see Kindred Nursing Centers Ltd. P'ship v. Leffew*, 398 S.W.3d 463, 467 (Ky. Ct. App. 2013) (stating that "Kentucky has adopted th[e] understanding of ratification" expressed in 2 Am. Jur. 2d *Agency* § 209 (2013)) (citing *Capurso v. Johnson*, 248 S.W.2d 908, 910 (Ky. 1952)).

Under the Restatement, the Owners are "coprincipals," and lack the power to ratify their agent's conduct on each other's behalf. *See* Restatement (Third) of Agency § 3.14 ("[A]n agent for coprincipals acts for more than one principal in the same transaction or other matter. Coprincipals are not hierarchically stratified."); *see also id.* § 4.01 ("When there are two or more coprincipals, *each must ratify to be bound*.") (emphasis added). American Jurisprudence is in accord. *See* 3 Am. Jur. 2d *Agency* § 176 (2013) ("If a ratification would bind multiple principals, each must affirm with knowledge of the acts to be ratified.") (citing Restatement (Third) Agency § 4.06 cmt. b.); *see also Kindred Nursing Centers Ltd. P'ship*, 398 S.W.3d at 467 (citing § 176 of Am. Jur. as authoritative on a question of agency law).

KNC did not vote to ratify Lane's End's conduct. To resolve the question whether the Owners' ratification is effective as to KNC, I would look to the authorities the Kentucky Supreme Court and Court of Appeals have relied on in published decisions rather than an unsupported, non-binding observation in an unpublished decision. According to those authorities, the Owners lacked authority to ratify Lane's End's conduct on KNC's behalf, and therefore, the Owners' ratification could not and did not extinguish KNC's claims for damages.

## B. Contract

I would also reject Lane's End's contention that the Owners' purported retroactive amendment of the contract moots KNC's claims for damages. Lane's End cites Kentucky decisions holding generally that a contract provision allowing for amendment of the contract is enforceable and binding, *see, e.g.*, *Kentucky Home Mut. Life Ins. Co. v. Leitner*, 196 S.W.2d 421, 423 (Ky. 1946)); *Supreme Lodge K.P. v. Hunziker*, 87 S.W. 1134, 1135 (Ky. 1905), but neither party cites cases addressing whether a contract provision granting one-sided authority to amend can be reasonably construed to include authority to amend the contract *retroactively*.

Kentucky follows the general rule of enforcing contracts as written. *See Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 685 (Ky. 2012) ("'[A] written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.") (quoting *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). No term in the Original Agreement confers on the Owners the power to *retroactively* change its terms. The Original Agreement provides that it may be "altered, amended, or modified" by thirty-four out of forty Owners, but says nothing about retroactivity, and the contract does not purport to govern the parties' *past* conduct. Under those circumstances, I see no basis to conclude that the Owners' authority to amend the Original Agreement includes the additional extraordinary power to retroactively amend it to eliminate an Owner's accrued claim for damages. *Cf., e.g.*, *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 373 (6th Cir. 1999) (declining to give a merger clause retroactive effect "as no other provision of the later agreement even 'remotely intimate[d] that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements'") (quoting *Choice Security Sys., Inc. v. AT&T Corp.*, No. 97–1774, 1998 WL 153254, at *1 (1st Cir. 1998) (unpublished)). To the extent that Lane's End argues that the Amended Agreement is probative of the Owners' understanding of the terms of the Original Agreement, that is not a contention that renders KNC's claims moot; it is an argument on one side of a live controversy.

I would VACATE the district court's mootness determination and reach the merits of KNC's appeal regarding Count III. In this regard, however, I agree with the district court's dismissal. KNC has shown no breach and no damages as relevant to the claims in this case.